Argued and submitted August 21, reversed November 9, 1981

In the Matter of the Compensation of
Dennis Berliner, Claimant.

**BERLINER,**
*Petitioner,*

*v.*

**WEYERHAEUSER COMPANY,**
*Respondent.*

(WCB No. 79-9454, CA A20552)

635 P2d 1055

Peter McSwain, Eugene, argued the cause for petitioner. On the brief were Evohl F. Malagon and Malagon, Velure & Yates, Eugene.

Paul Roess, Coos Bay, argued the cause for respondent. With him on the brief was Foss, Whitty & Roess, Coos Bay.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

### ROBERTS, J.

The issue in this workers' compensation case is whether claimant's claim for his work-related psychiatric condition was prematurely closed. The referee found that claimant was not medically stationary when his claim was closed; the Workers' Compensation Board reversed the referee and reinstated the original determination order granting claimant 5 percent unscheduled permanent partial disability for injury to his low back, 10 percent scheduled permanent partial disability for loss of use of his right leg, and 10 percent scheduled permanent partial disability for loss of use of his left leg. On *de novo* review, we find that claimant was not medically stationary and reverse.

Claimant injured his right knee in 1975 while employed as a choke setter. He subsequently developed problems with his left leg and hip and low back. These were held compensably related to the original injury by a Board order on November 18, 1977. We affirmed without opinion. *Berliner v. Weyerhaeuser*, 43 Or App 474, 604 P2d 459 (1979). In late 1977 claimant began consulting a psychiatrist, who diagnosed a cyclothymic personality and reactive depressive neurosis. By Board order dated May 9, 1978, the 1975 injury was found to materially have contributed to claimant's psychiatric condition.

The evidence which was apparently relied on by the Board included:

(1) The 1975 evaluation of claimant for the Disability Prevention Division, finding a moderate degree of psychopathology present for many years prior to the injury, and concluding that claimant's tension and anxiety had been only mildly influenced by his 1975 injury. The clinical psychologist preparing the report predicted claimant's negative personality characteristics — alcoholism, impulsiveness, anxiety and marital upset — would persist in future years.

(2) A letter from the psychiatrist who first treated claimant in the spring and summer of 1977. He reported claimant initially complained of anxiety related to his medical condition, manifested by insomnia, weight loss, increasing irritability and fleeting suicidial tendencies.

This doctor reported that over four sessions claimant had improved in mood and in confidence. Claimant had at that time received no medication but, in addition to the sessions with the psychiatrist pursued marital therapy and self-hypnosis. The psychiatrist said that the most therapeutic treatment for claimant would be prompt resolution of his physical and financial problems.

(3) A letter from a therapist at Coos County Community Mental Health Services, where claimant had first been seen in November, 1976, reported that a combination of marital therapy, group therapy and hypnotherapy had seemed to help claimant "though he still has periods of depression related to his situation."

Subsequent to the May, 1978, order, and pertinent to whether claimant's psychiatric condition had stabilized by August, 1979, the record contains the following:

(1) A letter from claimant's first psychiatrist, dated October 26, 1978, addressing the issue whether claimant's condition was medically stationary. The doctor reported it was not, that claimant had been on medication for several months and that it had recently been necessary to increase the dosage. The psychiatrist added that claimant needed vocational help "immediately" and advised employer to check with him in two to three months for another evaluation.

(2) A report dated March 7, 1979, from Dr. Martin, the psychiatrist who had by then become claimant's treating physician. Dr. Martin, asked for his opinion as to whether claimant was medically stationary, reported that he was not. He added, "While it would be difficult to estimate the length of time needed for further treatment I would hope that in the next three or four months he is sufficiently stabilized that only intermediate sessions at monthly intervals would be necessary."

(3) A letter from Dr. Martin to employer dated August 10, 1979, reporting that claimant was no longer on medication "and psychiatrically appears to be getting along fairly well." Dr. Martin reported he had been seeing claimant once a month and "would now prefer to see him only on an as needed basis."

As a result of Dr. Martin's August 10 letter, the determination order was issued October 9, 1979, awarding claimant temporary time loss payments from May 7, 1975, through August 10, 1979, and the award for permanent disability. Claimant requested a hearing, which was held March 27, 1980. Immediately following the hearing, Dr. Martin testified by deposition, which was taken in his office. During the deposition he testified unequivocally that claimant had not been medically stationary in August, 1979, and, at the time of the deposition, was still not medically stationary. Dr. Martin had, on March 10, 1980, written to the employer as follows:

> "* * * [Y]our company apparently interpreted my remarks in that letter of August 10th, as saying that Mr. Berliner was medically stable. As a result of that action Mr. Berliner had gradually become increasingly anxious and depressed and it was again necessary for me to see him because of his increased insomnia, ten pound weight loss, increasing paranoid ideations with suicidal and homicidal thoughts. At the present time Mr. Berliner has settled down with this additional individual psychotherapy and is currently doing better *though still far from being medically stationary.*" (Emphasis added.)

■ "Medically stationary" is defined in ORS 656.005(21) as happening when "no further material improvement would reasonably be expected from medical treatment, or the passage of time." Claimant had the burden to prove, by a preponderance of the medical evidence, that his condition was not medically stationary at the time his claim was closed. *Austin v. SAIF,* 48 Or App 7, 12, 615 P2d 1188 (1980). Here he has done so.

■ Dr. Martin, in his deposition, said clearly that he believed claimant could be expected to improve. The only other medical testimony in evidence was a report from Dr. Colbach, who examined claimant at employer's request after the hearing on April 30, 1980, and nearly eight months after the claim closure. This report was received by the referee as additional evidence.[1] Dr. Colbach found claimant's psychiatric condition then to be stationary,

---

[1] The referee also received, as additional evidence, Dr. Martin's response to Dr. Colbach's report.

though he said the depressive neurosis should improve in future years.

The referee found Dr. Colbach's opinion "not very persuasive," and on the basis of the opinion of the treating physician, Dr. Martin, he held that claimant's condition on August 10, 1979 was not medically stationary. The Board reversed, saying

"Although Dr. Martin does not find claimant's psychological condition to be stationary, it appears that claimant will not be declared stationary by this doctor until claimant is vocationally retrained and back to work."

We find the opinion of Dr. Colbach, who examined claimant only once eight months after closure, to be of little weight in determining whether claimant's psychological condition had stabilized earlier. The unwavering opinion of claimant's treating physician, who had seen him for over a year, was that the claimant was not medically stationary. Employer's only attack on Dr. Martin's testimony was an assertion that the doctor's desire to see claimant receive vocational training, and his mistaken belief that claimant could not do so after his time loss benefits were terminated, provided a motive for the doctor to "change his story" after the August 10 letter. Claimant has met his burden of proof in showing that he was not medically stationary on August 10, 1979.

The order of the Board is reversed, and the referee's order is reinstated.[2]

Reversed.

---

[2] Because of the manner in which we decide this case, we do not reach claimant's second assignment of error, that the Board erred in reinstating the original determination order rather than remanding for a hearing on the extent of disability.