Argued and submitted January 17, affirmed July 3, 1996

In the Matter of the Compensation of
Lori Ann Wages, Claimant.

BANK OF NEWPORT,
*Petitioner,*

*v.*

Lori Ann WAGES,
*Respondent.*

(93-04948; CA A89282)

919 P2d 1189

Kevin L. Mannix argued the cause for petitioner. On the brief were Patricia Nielsen and Kevin L. Mannix, P.C.

Victor Calzaretta argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Employer seeks reversal of an order of the Workers' Compensation Board that granted claimant benefits for an adjustment disorder. The Board concluded that claimant's mental disorder was the product of employment conditions other than those "generally inherent in every working situation." ORS 656.802(3)(b). We affirm.

The Board found the following material facts: Claimant worked as a teller for the employer bank for six months, from October 1992 to March 1993. Throughout that time, claimant experienced stress because of various interactions with her supervisor. In particular, claimant believed that the supervisor had unfairly singled her out, was overly critical of her work, and ignored or was unwilling to listen to her explanations. However, claimant's perceptions in that regard were not based on conditions that "exist[ed] in a real and objective sense." ORS 656.802(3)(a).[1] Claimant also experienced tension because of her belief that her supervisor had given her an unjustifiably negative performance review. However, contrary to claimant's perception, the review was, in fact, favorable, not negative.

Claimant also experienced stress because of what she perceived to be ridicule and harassment based on her physical condition. Throughout her employment, claimant was obese and was very concerned about that condition. Nevertheless, her supervisor made disparaging comments about

---

[1] ORS 656.802(3) provides:

"Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:

"(a) The employment conditions producing the mental disorder exist in a real and objective sense.

"(b) The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.

"(c) There is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d) There is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

obese people in general and claimant's obesity specifically. For example, on one occasion, the supervisor complemented a customer on her weight loss and, in the customer's presence, said to claimant, "See * * *, if she can do it, you can do it too." Another time, the supervisor made a comment in claimant's presence about obese people giving "the impression of being out of control and dirty." On yet another occasion, when claimant was wearing a pink shirt, the supervisor made a "pink elephant" joke but denied that her remarks were directed at claimant.

The most egregious episode pertaining to claimant's obese physical condition occurred in early March 1993, when bank sweatshirts were delivered to the branch where claimant worked. As a "joke," and without claimant's knowledge or permission, her supervisor and another employee jointly put on claimant's sweatshirt and had a third employee take a picture of them in the sweatshirt. The supervisor then showed the picture to several other bank employees, sharing the "joke." About a week later, after claimant asked her supervisor if she could take some vacation time to take a weight reduction cruise, the supervisor gave her the sweatshirt picture and told her that the picture should give her sufficient incentive to lose weight.

Claimant was humiliated both by the sweatshirt photograph and by her supervisor's "incentive" remark. That evening, while in a restaurant with her husband and mother, claimant experienced a panic attack and, when questioned, she explained what had happened at the bank that day. Three days later, claimant saw a physician for anxiety attacks, arm numbness and itching, chest pain, and inability to sleep, which had occurred on and off since the sweatshirt incident. The physician diagnosed work-related anxiety, took claimant off work, and referred her for counseling.

Thereafter, and for a period of two months, Dr. Schumann, a clinical psychologist, treated claimant. Schumann ultimately diagnosed claimant as suffering from a work-related adjustment disorder. Schumann wrote a report that discussed the full range of potential stressors in claimant's employment, including those conditions that the Board later

determined did not "exist in a real and objective sense," ORS 656.802(3)(a), and then concluded:

"In my opinion [claimant's] present state of acute anxiety and depression including occasional suicidal thoughts from life being too hard was caused by the stress at work consisting of low level but constant harassment and ridicule from her supervisor * * * and the ultimate insensitivity, if not cruelty of the 'photograph incident.' I believe that this stress constitutes a retraumatization of a young woman who has suffered from emotional problems for a long time.

"* * * [Claimant] had begun to diet and exercise and started to lose weight when she began her new job at the bank. She felt anxious to do a good job but was quickly intimidated by her supervisor's behavior although still enjoying her colleagues. As time went on things became more aggravating and upsetting so that she found herself dreading to get up in the morning and to face having to go back to work and feel humiliated the next morning."

Claimant filed an occupational disease claim for her adjustment disorder. The administrative law judge (ALJ) determined that the claim was not compensable because claimant had failed to prove, via expert medical testimony, that the "major contributing cause" of her adjustment disorder was employment conditions that "exist[ed] in a real and objective sense" and that were "conditions other than those conditions generally inherent in every working situation." ORS 656.802(2)(a) and (3)(a) and (b). In particular, the ALJ concluded that Schumann's opinion that claimant's mental disorder was "caused by the stress at work" did not sufficiently distinguish between stressors that existed "in a real and objective sense" (*e.g.*, the supervisor's remarks about obesity and the "photograph incident") and those that did not (*e.g.*, the supervisor's alleged "singling out" of claimant and the "unfavorable" performance review).

The Board, although adopting the ALJ's findings of fact, reversed. In so holding, the Board agreed with employer that "medical evidence that does not factor out excluded from nonexcluded employment conditions under ORS 656.802(3) cannot satisfy a claimant's burden of proving a compensable

mental disorder." The Board concluded, however, that claimant's medical evidence, particularly Schumann's opinion, satisfied that standard:

"Dr. Schumann, claimant's treating psychologist, opined that claimant was exhibiting many of the classic symptoms of an adjustment disorder. She concluded that claimant's mental state was caused by stress at work consisting of low level harassment and ridicule from her supervisor and the 'ultimate insensitivity if not cruelty' of the photograph incident. Given the significance to which Dr. Schumann accorded the photograph incident, we conclude that Dr. Schumann's opinion supports a finding that cognizable stressors under ORS 656.802(3) were the major contributing cause of claimant's mental disorder.

"* * * * *

"We recognize that no medical opinion explicitly weighed excluded stressors (such as claimant's performance evaluation and her allegations of being ignored and harassed) against non-excluded stressors (such as the photograph incident and jokes and remarks about obesity) as required by ORS 656.802(3)[.] However, given the emphasis both Dr. Turco and Dr. Schumann placed on the photograph incident (as opposed to the excluded stressors), we are persuaded that it, as well [as] real and objective stress from the ridicule regarding claimant's obesity, played the major causative role in producing an adjustment disorder that required medical services and resulted in disability." (Record citations omitted.)

In petitioning for review, employer reiterates its argument that claimant's medical evidence did not sufficiently distinguish between conditions that are cognizable under ORS 656.802(3), and those that are not, as the major contributing cause of her mental disorder. In so arguing, employer does not dispute the Board's determination that the comments and conduct pertaining to claimant's obesity, including the "photograph incident," existed "in a real and objective sense," and, thus, were cognizable conditions under ORS 656.802(3)(a). Nor does employer dispute that those conditions are conditions "other than conditions generally inherent in every working situation." ORS 656.802(3)(b). Finally, employer acknowledges that a medical opinion *may* be sufficient proof of causation even if it does not explicitly

employ the "magic words" of "major contributing cause."[2] *See McClendon v. Nabisco Brands*, 77 Or App 412, 417, 713 P2d 647 (1986).

Employer argues, however, that the deficiencies in claimant's proof of causation transcends the mere absence of "magic words." Instead, employer asserts, that proof "did not attempt to factor out" noncognizable conditions and, consequently, the "Board read into medical reports opinions which simply were not there."

Stripped to its essentials, employer's argument is that the Board read too much into the medical reports, particularly Schumann's. The inquiry thus reduces to whether the Board, as a trier of fact, could reasonably read Schumann's opinion as concluding, albeit implicitly, that cognizable stressors were the "major contributing cause" of claimant's adjustment disorder. ORS 183.482(8)(c); ORS 656.802-(2)(a).

We conclude that the Board could reasonably so read Schumann's opinion. That opinion recites that claimant became obese as an adolescent as a result of traumas associated with her father's death, her mother's severe alcoholism, and her own withdrawal and suicidal depression. Schumann further noted that, when claimant began working for the bank, she "had begun to diet and exercise and started to lose weight" and "felt anxious to do a good job." Schumann's opinion is properly construed not only in the light of those circumstances, which explicitly informed her assessment, but also in the context of her references to "ridicule" from the supervisor's obesity-related remarks, her descriptions of "the ultimate insensitivity if not cruelty of the 'photograph incident,'" and her description of claimant's symptomatic "dreading to get up in the morning and to face having to go back to work and feel humiliated the next morning" and "fear [of] running into [her supervisor] or other bank employees fearing taunting or ridicule." Viewed in its totality, the Board could

---

[2] At oral argument, employer's counsel stated:

"The [Oregon] Supreme Court and the Court of Appeals have long held that the magic words are not necessary. That what you have to do is take the statement as a whole by the medical practitioner and determine whether or not, in context, that is the essence of what they're saying."

reasonably read Schumann's opinion as concluding that, given this claimant's particular history, the cognizable, obesity-related workplace conditions were the preponderant cause of her mental disorder. Consequently, the Board did not err in concluding that claimant's medical proof was sufficient to meet her burden or proof under ORS 656.802(3)(a).

Affirmed.