Argued and submitted July 1, 1996, affirmed September 10, 1997

In the Matter of the Compensation of
Sharon A. Daquilante-Richards, Claimant.

Sharon A. DAQUILANTE-RICHARDS,
*Petitioner,*

*v.*

CIGNA INSURANCE COMPANIES
and Crane Company,
*Respondents.*

(WCB 93-12931, 93-12181; CA A90076)

945 P2d 91

Susan D. Isaacs argued the cause and filed the brief for petitioner.

Vera Langer argued the cause for respondents. With her on the brief was Scheminske, Lyons & Bussman.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Claimant seeks review of a Workers' Compensation Board order sustaining a notice of closure. We affirm.

Claimant, who was employed as a warehouse worker, sustained an on-the-job injury on November 15, 1990. On December 5, 1990, claimant saw Dr. Irvine, complaining of left lateral elbow pain. Irvine diagnosed work-related left lateral epicondylitis[1] and left rotator cuff syndrome, and on May 2, 1991, insurer accepted those two conditions.

After further examination and treatment of claimant, who was experiencing continuing pain in her neck, left shoulder, and elbow, Irvine began to suspect that he had misdiagnosed her condition. Consequently, he ordered an MRI scan of her neck and, on July 5, 1991, referred claimant to Dr. Flemming for an evaluation of possible cervical radiculopathy. Flemming confirmed the cervical disc herniation shown on the MRI and believed that the elbow pain was not related to the cervical condition.

Irvine continued to treat claimant's elbow and shoulder pain unsuccessfully and, on November 15, 1991, referred her to Dr. Denekas, who also confirmed cervical disc herniation in her neck. Irvine then referred claimant to Dr. Misko for possible surgery.

Misko corroborated the cervical difficulties and proposed surgery to fuse the discs of claimant's neck. Claimant filed a workers' compensation claim for the cervical disc herniation. After claimant was examined by several other doctors, who concluded that the cervical condition was unrelated to work and was a separate condition from the accepted left lateral epicondylitis and left rotator cuff syndrome, insurer denied compensability of the cervical disc herniation on May 13, 1993.

In a proceeding that was separate from the matter before us, claimant challenged the denial of the cervical disc

---

[1] Epicondylitis as described in this case is an infection or inflammation of a projection on the humerus, the long bone of the upper arm. *Stedman's Medical Dictionary*, 536 (2d unabridged lawyers' ed 1966).

disease, contending that insurer's prior acceptance of the left lateral epicondylitis and left rotator cuff syndrome necessarily included her ostensibly related left arm and shoulder symptoms, and any causes of those symptoms, including her cervical condition. The administrative law judge (ALJ) concluded that the

> "insurer asked Dr. Irvine for his diagnosis and then specifically accepted two separate identifiable medical conditions: left rotator cuff syndrome and left lateral epicondylitis. Insurer did not accept symptoms as in [*Georgia Pacific v. Piwowar*, 305 Or 494, 753 P2d 948 (1988)] but accepted medical conditions. It cannot be said that insurer accepted responsibility for whatever the cause of claimant's symptoms were, but rather restricted its acceptance to the two medically recognized conditions. Consequently, [*Piwowar*] is not applicable to the facts of this case. *Boise Cascade Corp. v. Katzenbach*, 104 Or App 732[, 802 P2d 709 (1990), *rev den* 311 Or 261 (1991)].

> "* * * Insurer is not barred from denying this condition."

The Board, without comment, adopted and affirmed the ALJ's order on July 29, 1994. Claimant did not seek review of that decision.

On September 3, 1993, while the disposition of claimant's herniated disc condition claim was still pending, insurer closed the accepted claim for epicondylitis and rotator cuff syndrome. That closure is the subject of this appeal. Claimant sought reconsideration, and the Workers' Compensation Division rescinded the closure, determining that claimant was not medically stationary on October 28, 1993.

Insurer appealed the Division's order on reconsideration, raising two alternative arguments in support of closure. First, insurer asserted that claimant's accepted epicondylitis and rotator cuff conditions did not exist—and in fact had never existed—and because nonexistent conditions cannot improve, the accepted conditions were necessarily medically stationary. Second, in all events, even if claimant's accepted conditions did exist, those conditions were, nonetheless, stationary on the date of closure.

Claimant responded that insurer, in asserting that her accepted conditions did not exist, was, in effect, issuing a

backup denial. Claimant also asserted that she was not medically stationary, and, thus, that her claim was closed prematurely.

An ALJ set aside the October 28, 1993, order, reinstating the September 3, 1993, notice of closure. The ALJ determined that

"[c]laimant does not suffer from conditions of left lateral epicondylitis or left rotator cuff syndrome. The symptoms which led to the misdiagnosis of left rotator cuff syndrome and left lateral epicondylitis were actually symptoms of claimant's noncompensable disc condition."

The ALJ further concluded that insurer, by denying the existence of the accepted condition as a basis for closure, had not issued a backup denial.

Claimant appealed, and the Board adopted and affirmed the ALJ's order with supplementation. In its supplementation, the Board emphasized that *claimant* had the burden of proving that her condition was *not* medically stationary, *see, e.g., Berliner v. Weyerhaeuser*, 54 Or App 624, 628, 635 P2d 1055 (1981), and that she failed to meet that burden. Consequently, her claim was not closed prematurely. In so holding, the Board expressly rejected as insufficient and unpersuasive the opinions of Irvine and Misko, on which claimant relied:

"Dr. Irvine, claimant's attending physician, initially diagnosed claimant's condition as left rotator cuff syndrome and left lateral epicondylitis. Later, Dr. Irvine indicated that claimant had cervical radiculopathy that had been present all along and accounted for claimant's upper extremity symptoms. Dr. Irvine explained that it became obvious that his initial diagnoses were in error * * *. Dr. Irvine later stated that claimant did, in fact, have epicondylitis but that this condition was secondary to her C4-5 disc herniation. Dr. Irvine did not believe that *any* of claimant's conditions were medically stationary at claim closure.

"* * * Dr. Irvine did not adequately explain how claimant's C4-5 cervical disc herniation caused either epicondylitis or rotator cuff pathology. * * * [W]e are not persuaded

that Dr. Irvine distinguished between the accepted conditions and the noncompensable cervical condition when he rendered his opinion concerning claimant's medically stationary status on the date of closure. Accordingly, we find Dr. Irvine's opinion that claimant's condition was not medically stationary on the date of closure to be unpersuasive.

"* * * * *

"* * * Dr. Misko opined that claimant's noncompensable cervical condition was not medically stationary. However, Dr. Misko never addressed whether or not the accepted rotator cuff syndrome and epicondylitis conditions were medically stationary. Accordingly, Dr. Misko's opinion is not persuasive concerning whether or not the accepted condition was medically stationary on the date of closure." (Emphasis in original.)

On judicial review, claimant reiterates her arguments that (1) "insurer's argument that accepted conditions never existed constitutes an improper backup denial under ORS 656.262(6)(a)";[2] and (2) her accepted conditions were not medically stationary on the date of claim closure. We do not address or resolve claimant's backup denial argument because we conclude that the Board's alternative ground for sustaining the notice of closure—i.e., that, even assuming the accepted conditions existed, claimant had failed to meet her burden of proving that they were not medically stationary— affords an independent and sufficient basis for affirmance.[3]

---

[2] ORS 656.262(6)(a) provides, in pertinent part:

"Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer * * * within 90 days after the employer has notice or knowledge of the claim. Once the claim is accepted, the insurer * * * shall not revoke acceptance except as provided * * *. If the insurer * * * accepts a claim in good faith, * * * and later obtains evidence that the claim is not compensable * * *, the insurer * * * may revoke the claim acceptance and issue a formal notice of claim denial, if such revocation of acceptance and denial is issued no later than two years after the date of the initial acceptance."

[3] Given our disposition, we imply no opinion as to the propriety of insurer's arguments that claimant's accepted conditions "never existed," particularly with respect to any entitlement to permanent compensation, which is not at issue here. Cf. Boise Cascade v. Borgerding, 143 Or App 371, 374, 923 P2d 1308 (1996) (where insurer denied compensability, after discovering more than two years from the date of acceptance that claimant's condition had been misdiagnosed and was not work-related, that denial constituted a "back-up denial" under ORS 656.262(6)).

We review Board orders for substantial evidence and errors of law. ORS 183.482(7),(8); ORS 656.298; *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 752 P2d 312 (1988). To be properly reviewed, the Board order must establish a set of findings of fact and explain why the facts support its conclusion. *Id.* at 207. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

■ ORS 656.268(1) permits an insurer to close accepted claims when the compensable conditions have become medically stationary. An injured worker is medically stationary when "no further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.005(17). *See Pratt v. SAIF*, 29 Or App 255, 258, 562 P2d 1242 (1977) (describing "medically stationary" as less than complete recovery, but continued treatment or the passage of time, with reasonable medical probability, will not likely improve the injured worker's condition). Claimant had the burden of proving, by competent medical evidence, that her condition was not medically stationary at the time of closure. *Berliner*, 54 Or App at 628; *Harmon v. SAIF*, 54 Or App 121, 125, 634 P2d 274, *rev den* 292 Or 232 (1981).

■ We agree with insurer that substantial evidence supports the Board's determination that claimant did not meet her burden of showing that she was not medically stationary when insurer issued a Notice of Closure on September 3, 1993. Claimant asserts, as she did before the Board, that the opinions of Irvine and Misko were sufficient to meet that burden.[4] However, the Board could and did determine that, although Irvine did not believe that claimant was medically stationary, his opinion did not adequately distinguish between the status and effects of claimant's noncompensable

---

[4] Claimant contends that Irvine, as her treating physician, was the only person who could declare her medically stationary. However, OAR 436-030-0035(1) provides:

"A worker's compensable condition shall be determined to be medically stationary when the attending physician *or a preponderance of medical opinion* declares the worker either 'medically stationary,' 'medically stable,' or uses other language meaning the same thing." (Emphasis supplied.)

cervical condition and the accepted rotator cuff and epicondylitis conditions. Similarly, the Board could and did determine that Misko's opinion focused on the noncompensable cervical condition and, as the Board determined, "never addressed whether or not the accepted rotator cuff syndrome and epicondylitis conditions were medically stationary." We perceive no error in assessment of those opinions. *See, e.g., Bank of Newport v. Wages*, 142 Or App 145, 919 P2d 1189 (1996). Because substantial evidence supports the Board's determination that claimant failed to establish that the accepted conditions were not medically stationary at the time of closure, the Board did not err in sustaining the notice of closure.

Affirmed.