Argued and submitted October 12, 2001, reversed and remanded for further proceedings May 8, 2002

In the Matter of the Compensation of
Leo R. Manley, Claimant.

Leo R. MANLEY,
*Petitioner,*

*v.*

SAIF CORPORATION;
and Housing Authority of Yamhill County,
*Respondents.*

99-04915; A110793

45 P3d 1027

Donald M. Hooton argued the cause and filed the briefs for petitioner.

Jerome P. Larkin argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

In this case, the Workers' Compensation Board ruled that, even if the direct medical sequela of claimant's accepted condition was not medically stationary at the time of claim closure, SAIF had not closed his claim prematurely. We reverse and remand.

Claimant cut the middle finger of his right hand in May 1998 while working on a plumbing project. The doctor who treated claimant at the emergency room noted that he had sustained a large laceration at the base of his finger with a small tear in the flexor tendon sheath. SAIF, on behalf of claimant's employer, accepted a claim for "laceration right third finger."

Dr. Janet Neuburg provided physical therapy after the injury. In August 1998, claimant told Neuburg that he was experiencing some painful snapping and was losing range of motion in the finger. She diagnosed the problem as probable trigger finger and referred claimant to Dr. Mas Yamanaka, who performed trigger finger release surgery. The two doctors gave divergent opinions about the cause of claimant's trigger finger. Yamanaka reported that "finger lacerations do not cause trigger finger." Neuburg could "neither agree nor disagree" with Yamanaka's assessment that claimant's accepted laceration condition and trigger finger were unrelated. Regardless, she felt that claimant was medically stationary at the end of January 1999.

SAIF closed the claim in February 1999.[1] The notice of closure did not award claimant temporary disability but did award him 29 percent permanent partial disability. Claimant disagreed with SAIF's impairment findings and requested reconsideration, raising multiple issues, including premature closure.[2]

---

[1] SAIF issued an updated notice of acceptance at closure, which reaffirmed that the "accepted condition(s) for your May 7, 1998 injury include: laceration right third finger." (Capitalization omitted.) The notice stated that, if claimant believed that a condition had been incorrectly omitted or that the notice was otherwise deficient, it was claimant's obligation to object to SAIF in writing.

[2] Claimant did not question the scope of SAIF's acceptance; he did not seek acceptance of the trigger finger as an omitted condition, as an aggravation of the original condition, or as a new medical condition. *See* ORS 656.262(6)(d); ORS 656.267.

On reconsideration, the medical arbiter examined claimant to determine the degree of his impairment. *See* ORS 656.268(7); OAR 436-030-0165(1). In his report, the arbiter explained that the degree of claimant's impairment "depend[s] on whether or not the trigger finger is a portion of this accepted claim." He reasoned that the laceration did not seem to be significantly limiting claimant but that the trigger finger did "certainly reveal some limitations" and appeared to be "a direct sequel[a] of [claimant's] laceration."[3] Because the trigger finger was not medically stationary, the arbiter reasoned that the claim should not be rated. He stated:

"Regarding the patient's accepted condition of the laceration and his subsequent trigger finger, without any other intervening process, I certainly see a direct correlation of the trigger finger being a direct sequel[a] of the patient's laceration as he was also documented to have a tendon injury at the time of the initial repair by the emergency room physician. Therefore, it would be my opinion that the patient should not yet be measured for formal impairment but that the triggering, which I feel is related to his accepted claim, be resolved appropriately first."

The Appellate Review Unit (ARU) asked the parties if they would consent to postpone reconsideration until claimant's condition became medically stationary. *See* ORS 656.268(7)(i)(B). SAIF declined to do so. It explained that claimant's trigger finger was "not an accepted condition nor has there ever been a written request to accept this condition as part of the claim." It followed, SAIF argued, that claimant's trigger finger condition should play no role in rating the degree of claimant's permanent impairment.

In its order on reconsideration, the ARU explained that the medical arbiter's report "indicates that this worker's condition has changed subsequent to the claim closure and does not reflect the worker's impairment at the time of claim closure." The ARU accordingly ruled that SAIF had not

---

[3] OAR 436-035-0005(5) defines a direct medical sequela as "a condition which originates or stems from the compensable injury or disease that is clearly established medically."

closed the claim prematurely. It allowed some temporary disability compensation but affirmed SAIF's notice of closure in all other respects.

Claimant requested a hearing. Before the administrative law judge and later before the Board, claimant argued that his trigger finger was a direct medical sequela of the laceration. He also argued that the trigger finger was not stationary at reconsideration and that it had not been stationary at the time of claim closure. Relying on ORS 656.268(14), claimant contended that, because both the accepted condition and its direct medical sequela had to be medically stationary at the time of claim closure, SAIF had closed his claim prematurely. SAIF responded with a variety of arguments.[4] It argued that the trigger finger condition was not a direct medical sequela of the laceration; that, even if it were, both the laceration and the trigger finger were medically stationary at the time of claim closure; and that, in any event, ORS 656.262(7)(c) limited the issue before the administrative law judge and the Board to whether the accepted condition—the laceration—was stationary at the time of claim closure.

The Board did not decide whether the trigger finger was a direct medical sequela of the laceration, nor did it decide whether the trigger finger had been medically stationary at the time of claim closure. Rather, relying on ORS 656.262(7)(c), the Board held that, in deciding whether a claim has been prematurely closed, it should focus only on those conditions that had been accepted at the time of claim closure. The Board added:

> "Moreover, to the extent that claimant is relying on [ORS 656.268(14)], that statute refers to *rating* permanent disability, not determining medically stationary status. Therefore, even assuming that the trigger finger condition

---

[4] Before the Board, SAIF argued that claimant's appeal was moot because it had recently accepted his trigger finger condition and was processing it. The Board disagreed with that argument. It reasoned that the question whether the trigger finger is processed as part of the original claim or instead as a new medical condition will determine the date of claimant's first valid claim closure and therefore the effective date of claimant's aggravation rights. *See* ORS 656.273(4)(a); *Susan K. Clift*, 51 Van Natta 646 (1999). SAIF does not renew its mootness argument on review.

is a direct medical sequel[a] of the accepted laceration con-
dition, the fact that the trigger finger condition was not
accepted at the time of closure precludes our consideration
of its medically stationary status."

(Emphasis in original.) Having concluded that its scope of
review was limited to the accepted condition, the Board found
that the only expressly accepted condition—the laceration—
was medically stationary at the time of claim closure. It fol-
lowed, the Board reasoned, that SAIF had not closed the
claim prematurely.

Claimant has petitioned for review of the Board's
order. On review, the parties' arguments proceed from differ-
ent sections of the workers' compensation law. SAIF's argu-
ments are based on ORS 656.262(6) and (7). Those subsec-
tions require an injured worker to object if he or she believes
that a condition has been incorrectly omitted from the notice
of acceptance, ORS 656.262(6)(d), and to "clearly request for-
mal written acceptance of a new medical condition," ORS
656.267(1). Finally, ORS 656.262(7)(c) provides that, if a con-
dition is found compensable after claim closure, the insurer
shall reopen the claim for processing. Relying on those sec-
tions, SAIF argues that an insurer's obligation to process
claims is limited to the conditions that it has accepted.
Because SAIF's acceptance was limited to "laceration right
third finger," SAIF reasons that it had no obligation to proc-
ess claimant's trigger finger condition or decide whether that
condition was medically stationary at the time of claim
closure.

■     Claimant relies on a different section of the workers'
compensation law. ORS 656.268(14) provides:

> "Conditions that are direct medical sequelae to the orig-
> inal accepted condition shall be included in rating perma-
> nent disability of the claim unless they have been
> specifically denied."

Claimant reasons that, under the terms of that subsection,
direct medical sequelae differ from omitted and new condi-
tions. Direct medical sequelae must be rated unless the
notice of acceptance specifically denies them. Conversely, an
insurer need not process or rate omitted and new conditions
unless specifically requested to do so. Claimant reasons that,

unless a direct medical sequela has been specifically denied, an insurer cannot close and rate a claim until both the "original accepted condition" *and* any direct medical sequelae are medically stationary.

The plain language of the statutes leads us to agree with claimant. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The workers' compensation statutes treat omitted conditions, new medical conditions, and other consequential conditions differently from direct medical sequelae. The former must be accepted to be rated. *See* ORS 656.262(6); ORS 656.267. The latter must be rated as part of the "original accepted condition" unless specifically denied. ORS 656.268(14).[5] The text of the statute makes clear that direct medical sequelae are an exception to the general rule that a condition must be accepted to be rated. Moreover, by directing that the original accepted condition and any direct medical sequelae that were not specifically denied be rated, the legislature necessarily implied that both the condition and its sequelae must be medically stationary at the time of claim closure. There would be no point in rating the extent of a worker's impairment if the causes of that impairment were not medically stationary.[6]

---

[5] *See also* OAR 436-035-0007(1) (worker entitled to value for permanent impairment caused by "the accepted compensable condition, an accepted consequential condition and direct medical sequelae"); OAR 436-035-0010(2) (same).

[6] The Board relied on its opinion in *Dennis J. Neeley*, 50 Van Natta 2127 (1998), to reach a different conclusion. In *Neeley*, the worker argued that his claim had been prematurely closed because a direct medical sequela of his accepted condition was not stationary at closure. The Board reasoned that only accepted conditions must be medically stationary under ORS 656.262(6) and (7). It also stated that ORS 656.268(14) has no bearing on that question. It reasoned: "[B]y its terms, ORS 656.268[(14)] refers to rating permanent disability, not determining medically stationary status, which is defined under ORS 656.005(17)." *Neeley*, 50 Van Natta at 2128. The Board noted that ORS 656.005(17) provides: " 'Medically stationary' means that no further material improvement would reasonably be expected from medical treatment, or the passage of time." *Id.* at 2128 n 3.

The Board's reliance on ORS 656.005(17) begs the question. That subsection defines *when* a condition will be medically stationary. It does not address *which* conditions must be medically stationary, which is the question presented here and in *Neeley*. ORS 656.268(14) does address that question, albeit in the context of rating permanent disability. It provides that "direct medical sequelae to the original accepted condition shall be included in rating permanent disability of the claim unless they have been specifically denied." The plain language of the statute treats direct medical sequelae as part and parcel of the original accepted condition unless specifically denied. Because the ability to rate a condition and its direct medical sequelae depends logically on both conditions being medically stationary, we do not

SAIF advances two arguments to support the Board's ruling. It relies initially on a footnote in *Daquilante-Richards v. CIGNA Ins. Cos.*, 149 Or App 682, 945 P2d 91 (1997), for the proposition that ORS 656.268(14) has no bearing on the question whether a direct medical sequela must be medically stationary at claim closure. In *Daquilante-Richards*, we held that substantial evidence supported the Board's finding that the claimant had failed to prove that her condition was not medically stationary at claim closure. *Id.* at 688-89. We also observed that the insurer had advanced an alternative argument. It had argued that it could not have closed the claim prematurely because the conditions that it accepted "in fact had never existed." *Id.* at 685. We explained, in a footnote, that "[g]iven our disposition, we imply no opinion as to the propriety [of the insurer's alternative argument], particularly with respect to any entitlement to permanent compensation, which is not at issue here." *Id.* at 687 n 3.

SAIF's argument rests on that footnote, but our footnote does not stand for the proposition that direct medical sequelae need not be medically stationary at claim closure. We did not address, either in that footnote or elsewhere in *Daquilante-Richards*, the relationship between ORS 656.268(14) and claim closure. We neither held nor said in *dictum* that the statute requiring that direct medical sequelae be rated has no bearing on claim closure. Rather, we simply declined to address the propriety or effect of the insurer's argument that the conditions it accepted had never existed. Having considered the parties' arguments in this case, we agree with claimant that, if his trigger finger was a direct medical sequela of his laceration and if his laceration and his trigger finger were not medically stationary at the time of claim closure, SAIF closed his claim prematurely.

SAIF advances a second argument. SAIF argues that, even if the trigger finger condition had to be medically stationary at claim closure, the evidence shows that it was stationary. In support of that proposition, SAIF reasons that

___

agree with the Board's opinion in *Neeley,* and in this case, that ORS 656.268(14) has no bearing on the question whether a claim was closed prematurely.

the fact that claimant's trigger finger was not medically stationary when the medical arbiter examined it does not mean that it was not stationary earlier. It follows, SAIF argues, that it did not close the claim prematurely.

■     We agree with SAIF that the relevant question is whether claimant's trigger finger was medically stationary at the time of claim closure. If it was, the fact that it was not medically stationary at some later point has no bearing on whether SAIF closed the claim prematurely. *See Hewlett-Packard Co. v. Leonard*, 151 Or App 307, 311, 948 P2d 1256 (1997); *Schuening v. J. R. Simplot & Company*, 84 Or App 622, 625, 735 P2d 1, *rev den* 303 Or 590 (1987). The difficulty with SAIF's argument, however, is that the Board never decided whether claimant's trigger finger condition was medically stationary at claim closure. On this record, the Board could infer, as claimant argues, that it was not, or it could infer, as SAIF argues, that it was. Not only has the Board not resolved that factual question, but it has also not decided whether claimant's trigger finger is a direct medical sequela of the laceration. Until the Board resolves those preliminary factual issues, we cannot say whether SAIF closed this claim prematurely. We accordingly reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.