Argued and submitted July 26, 2011, affirmed August 29, 2012

In the Matter of the Compensation of
Hilda Banderas, Claimant.
## SAIF CORPORATION
and Bright Wood Corporation,
*Petitioners,*

*v.*

## Hilda BANDERAS,
*Respondent.*

Workers' Compensation Board
0902807; A146082

286 P3d 1237

David L. Runner argued the cause and filed the briefs for petitioners.

Edward J. Harri argued the cause for respondent. With him on the brief was Philip H. Garrow.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, J., *vice* Carson, S. J.

**SERCOMBE, J.**

SAIF and employer seek review of an order of the Workers' Compensation Board (board) that awarded claimant permanent partial disability (PPD) benefits.[1] SAIF asserts that the board erred in (1) rejecting the medical arbiter panel's impairment findings in favor of the attending physician's impairment findings and (2) concluding that claimant's myofascial pain syndrome is part of or a "direct medical sequela" of the accepted cervical strain.[2] We review for errors of law and substantial evidence, ORS 183.482(8), and affirm.

Before turning to the facts in this case, we briefly summarize the PPD-determination process as relevant here. With limited exceptions, when an injured worker is "medically stationary and there is sufficient information to determine permanent disability," the employer's insurer "shall close the worker's claim * * * and determine the extent of the worker's permanent disability." ORS 656.268(1).[3] Initially, the extent of the worker's impairment "is established based on objective findings of the attending physician." OAR 436-035-0007(5). "Conditions that are direct medical sequelae to the original accepted condition shall be included in rating permanent disability of the claim unless

---

[1] Petitioners in this case are SAIF Corporation and Bright Wood Corporation. For ease of reference, we refer to them collectively as SAIF.

[2] Additionally, SAIF raises two other assignments of error. First, SAIF contends that the board erred in concluding that claimant was not released to regular work at the job that she had at the time of injury. See ORS 656.726(4)(f)(D) (2003) (impairment is the only factor considered in evaluating worker's disability under ORS 656.214(5) if, as relevant here, the worker's attending physician "releases the worker to regular work at the job held at the time of injury but the worker's employment is terminated for cause unrelated to the injury"). We conclude that the board's conclusion is supported by substantial evidence and substantial reason and, accordingly, reject that assignment of error without further discussion.

Second, SAIF contends that the board erred in finding that claimant did not have a high school diploma or general equivalency diploma. See OAR 436-035-0012(4)(b) (a claimant is entitled to a value of +1 for formal education if she has not earned or acquired a high school diploma or general equivalency diploma). We conclude that that finding is supported by substantial evidence and, accordingly, reject that assignment of error without further discussion.

[3] Although some statutes and Oregon Administrative Rules have been amended or renumbered since the relevant time period in this case, those changes are not material to our analysis. Therefore, we cite to the current version of the statutes and Oregon Administrative Rules unless otherwise noted.

they have been specifically denied." ORS 656.268(15); *see also* OAR 436-035-0007(1) (except in limited circumstances not applicable here, "a worker is entitled to a value under these rules only for those findings of impairment that are permanent and were caused by the accepted compensable condition and direct medical sequela"); OAR 436-035-0005(6) (defining "direct medical sequela" as a "condition which originates or stems from an accepted condition that is clearly established medically"). The insurer must issue a notice of closure that informs the worker of "the amount of any further compensation, including permanent disability compensation to be awarded." ORS 656.268(5)(a)(B).

Either the worker or the insurer may seek reconsideration of that award by the director of the Department of Consumer and Business Services (DCBS). ORS 656.268(5)(c). We have previously summarized that process as follows:

> "[I]f the objection to the notice of closure is 'disagreement with the impairment used in rating of the worker's disability,' the director will refer the claim to a medical arbiter or medical arbiter panel. ORS 656.268(8)(a); *see* ORS 656.268(8)(c) (regarding medical arbiter panels). The medical arbiter's findings are 'submitted to the director for reconsideration of the notice of closure.' ORS 656.268(8)(g). When a medical arbiter (or panel) has been used on reconsideration, 'impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used.' OAR 436-035-0007(5). Those findings will be used to determine the extent of impairment—that is, the findings will be 'rated'—*except* when 'the physician determines the findings are invalid and provides a written opinion, based on sound medical principles, explaining why the findings are invalid.' [*Former*] OAR 436-035-0007(12) (Jan 1, 2006)."

*SAIF v. Miguez*, 249 Or App 388, 391, 277 P3d 601 (2012) (bracketed material omitted; emphasis in original).

We summarize the facts from the board's order and the record. Claimant was compensably injured while pushing a bin containing wood in August 2004, and SAIF accepted a right shoulder strain. In April 2006, Dr. Hill,

claimant's attending physician, diagnosed claimant with "[c]ervical and right shoulder strain injuries" that included "myofascial pain syndrome related to [the] initial injury and ongoing repetitive work activities." From May to July 2006, Hill consistently described claimant's conditions as a "chronic right cervical strain" and "right shoulder tendinopathy" and noted that she was experiencing pain and trigger points consistent with cervical myofascial pain syndrome.

In August 2006, Hill performed a closing examination for claimant's right shoulder condition. Hill's assessment again included "chronic right cervical strain" and "right shoulder tendinopathy," and he noted that claimant had "some myofascial trigger points on the right." Hill performed a second closing examination for claimant's right shoulder condition in October 2006. Consistently with his earlier diagnoses, Hill opined that claimant had a cervical strain with "residual myofascial pain syndrome" and a "right shoulder strain with residual bursitis/tendinitis." Additionally, Hill measured claimant's range of motion in her right shoulder and found mild loss of motion. SAIF issued a notice of closure in October 2006 that awarded claimant three percent unscheduled PPD due to claimant's decreased range of motion in her right shoulder. Neither claimant nor SAIF requested reconsideration of that award.

Between November 2006 and May 2008,[4] Hill conducted an additional 12 examinations of claimant. In his reports concerning those examinations, Hill consistently described claimant's conditions as a cervical strain with myofascial pain syndrome and a right shoulder strain with bursitis. On nine occasions, Hill further described claimant's cervical strain as "chronic." Additionally, on several occasions, Hill explicitly opined that claimant's myofascial pain syndrome was an "associated" or "residual" condition of her cervical strain.

In July 2008, SAIF accepted additional conditions of cervical strain and right shoulder subacromial bursitis and reopened the claim for processing. Following that

---

[4] Claimant was laid off from her job in February 2008 for reasons that are unrelated to her injury.

modification, Hill examined claimant three more times—including the last time on December 5, 2008—and the reports stemming from those examinations contain descriptions of claimant's conditions that are consistent with those in his earlier reports. Throughout his treatment of claimant, Hill consistently reported that claimant's conditions were secondary to her documented work injury of August 2004, but also noted, in some of his reports, that claimant's conditions were negatively affected by her ongoing and repetitive work activities.

In December 2008, SAIF provided Hill with a questionnaire asking him to agree or disagree with particular statements. One of those statements was as follows: "There is no permanent impairment directly related to the 'cervical strain.'" In response, Hill checked the provided box labeled, "I agree," but also noted, in the space beside that box, that his "closing reports of 8/18/06, 10/2/06 summarize impairment." Regarding claimant's right shoulder, Hill also noted that "the closing evaluation in 2006 remains valid." Later that month, SAIF issued a notice of closure that did not award claimant additional PPD benefits.

SAIF requested reconsideration and appointment of a medical arbiter panel. Shortly thereafter, claimant's attorney requested clarification from Hill regarding claimant's impairment and work restrictions. In response, Hill opined that, due to the compensable work injury, claimant is "significantly limited in the repetitive use" of her right shoulder and cervical spine. Additionally, he noted that, due to the compensable injury, claimant could not frequently reach, push, or pull and that she could not carry more than 15 pounds on an occasional basis. Claimant then requested reconsideration.

A medical arbiter panel examined claimant in April 2009. Although the panel measured decreased ranges of motion in claimant's cervical spine and right shoulder, the panel declared those findings invalid on the basis that claimant's observed ranges of motion exceeded her measured ranges of motion. Moreover, the panel opined that, in any event, those findings were not due to the accepted conditions. The panel concluded that "[t]here is no

basis * * * for limitation of repetitive use of the cervical spine due to any condition arising out of the accepted condition of cervical strain." The panel did conclude, however, that claimant was significantly limited in the repetitive use of her right shoulder due to the accepted right subacromial bursitis.

On reconsideration, the Appellate Review Unit (ARU) of DCBS, relying on the panel's impairment findings, concluded that claimant was entitled to five percent PPD for chronic condition impairment of the right shoulder. Claimant requested a hearing, asserting, among other things, that Hill's impairment findings were more accurate and, therefore, that the ARU should have used them to determine claimant's impairment. The administrative law judge (ALJ) agreed with claimant, concluding that "Hill's valid findings of impairment are more probative and reliable evidence of claimant's impairment than the medical arbiter panel's invalid findings." On the basis of Hill's findings, the ALJ awarded claimant five percent PPD for chronic condition impairment of the right shoulder and five percent PPD for chronic condition impairment of the cervical spine, and combined those awards with the three percent PPD award from the October 2006 claim closure to obtain a total impairment award of 13 percent PPD.

SAIF appealed to the board, asserting that the ALJ had erred in relying on Hill's findings for two reasons that are relevant here. First, SAIF asserted that, because Hill's impairment findings did not distinguish between impairment due to the accepted conditions and impairment due to myofascial pain syndrome—an "unclaimed and unaccepted condition"—the ALJ erred in relying on those findings. SAIF further asserted that the record did not establish that claimant's myofascial pain syndrome was a "direct medical sequela" of the accepted conditions. Second, SAIF asserted that, under *Hicks v. SAIF*, 194 Or App 655, 96 P3d 856, *adh'd to as modified on recons*, 196 Or App 146, 100 P3d 1129 (2004), the ALJ erred in disregarding the "unambiguous findings of the medical arbiter panel" in favor of the attending physician's impairment findings.

The board affirmed the ALJ's order, concluding that Hill's findings of impairment were more accurate. In doing so, the board noted SAIF's argument that claimant's myofascial pain syndrome was a separate condition—not a direct medical sequela of the accepted cervical strain—but rejected it "[b]ased on Dr. [Hill's] consistent characterization of claimant's myofascial pain syndrome as part of the cervical strain." The board reasoned, in part, that, "given the medical arbiter panel's failure to address [that] aspect of claimant's cervical strain, the preponderance of evidence establishes that Dr. Hill's impairment findings are more accurate."

On review, SAIF first contends that the board erred in rejecting the medical arbiter panel's impairment findings in favor of Hill's impairment findings. As noted, OAR 436-035-0007(5) provides, in part, that, "[o]n reconsideration, where a medical arbiter is used, impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used." SAIF contends that, under *Hicks*, 194 Or App 655, the board was not free under OAR 436-035-0007(5) to disregard the medical arbiter panel's impairment findings where Hill "did not provide any opinion about the medical arbiter panel's observations and findings or otherwise expressly address the validity of claimant's impairment findings at the time of the reconsideration proceeding." Claimant responds that "*Hicks* is applicable when the medical arbiter's opinion is the only opinion of impairment. Here, however, the treating physician, Dr. Hill, provided other evidence of impairment which the board found more persuasive, consistent with OAR 436-035-0007(5)." (Citation omitted.) According to claimant, "neither the statute nor an administrative rule requires a rebuttal to a panel's opinion to discount its value." We agree with claimant.

In *Hicks*, SAIF accepted a claim for disc herniation after the claimant fell from a ladder at work. 194 Or App at 657. The claimant's attending physician opined that the claimant would not suffer permanent impairment as a result of his injury. *Id.* SAIF awarded 18 percent PPD, and

the claimant sought reconsideration. *Id.* A medical arbiter examined the claimant and opined that 100 percent of the claimant's cervical pain and range of motion loss was due to the accepted disc herniation. *Id.* The ARU relied on the medical arbiter's findings and increased the claimant's award. *Id.* at 658. SAIF requested a hearing, contending that the findings of the attending physician were more accurate and should have been used. *Id.* The ALJ concluded that "a preponderance of the medical evidence in the record establishes a different level of impairment than that found by the medical arbiter." *Id.* (internal quotation marks omitted). In its opinion affirming the ALJ, the board expressly stated that it did not rely on the attending physician's report, but that it nevertheless found the medical arbiter's opinion unpersuasive. *Id.* at 658-59. Accordingly, it decreased the claimant's PPD award. *Id.* at 659. We held that the board erred:

> "In this case, because the board expressly did not rely on the attending physician's impairment findings, there remained only one medical opinion on which the board could rely in determining claimant's level of impairment—that of the medical arbiter.
>
> "* * * * *
>
> "* * * In the absence of other evidence showing a different level of impairment or that the impairment was not related to the injury, the board was not free to disregard the medical arbiter's opinion as not persuasive."

*Id.* at 659-60.

As noted, SAIF contends that our holding in *Hicks* precluded the board from rejecting the medical arbiter panel's impairment findings. We disagree. Our holding in *Hicks* is limited to circumstances in which the board has expressly rejected other medical evidence concerning impairment and is left with only the medical arbiter's opinion of impairment. In that case, as we explained on reconsideration, "the medical arbiter's report provides the default determination of a claimant's impairment." *Hicks v. SAIF*, 196 Or App 146, 152, 100 P3d 1129 (2004). Where the attending

physician has provided an opinion of impairment and the board does not expressly reject that opinion, OAR 436-035-0007(5) expressly permits the board to prefer the attending physician's impairment findings, if the preponderance of the medical evidence establishes that they are more accurate. In that circumstance, nothing in *Hicks* or OAR 436-035-0007(5) requires the board to prefer a medical arbiter's impairment findings because the attending physician has not rebutted the medical arbiter's invalidity findings. Here, the attending physician made impairment findings, and the board did not err in relying on those findings. Accordingly, we reject SAIF's first assignment of error.

In its second assignment of error, SAIF contends that the board erred in concluding that claimant's myofascial pain syndrome is part of or a "direct medical sequela" of the accepted cervical strain. Specifically, SAIF asserts that, as a matter of law, only conditions that are "indisputable and uncontested" qualify as "direct medical sequelae" under ORS 656.268(15) and OAR 436-035-0007(1). As noted, conditions that are "direct medical sequelae" to the accepted condition must be "included in rating permanent disability of the claim unless they have been specifically denied." ORS 656.268(15); *see also* OAR 436-035-0007(1) (except in limited circumstances not applicable here, "a worker is entitled to a value under these rules only for those findings of impairment that are permanent and were caused by the accepted compensable condition and direct medical sequela"). A "direct medical sequela" is "a condition which originates or stems from an accepted condition that is clearly established medically." OAR 436-035-0005(6). Substantial evidence must support the board's finding that a condition—the "direct medical sequela"—originates or stems from an accepted condition and that it is clearly established medically. *See Office Depot, Inc. v. Joerres,* 195 Or App 756, 761, 99 P3d 789 (2004), *rev den,* 338 Or 680 (2005) (substantial evidence supported the board's conclusion that the claimant's knee instability was a "direct medical sequela" of an accepted condition); *Roseburg Forest Products v. Clemons,* 169 Or App 231, 236, 9 P3d 123 (2000)

(substantial evidence supported board's finding that the claimant's foot weakness was part of the accepted condition).

SAIF's suggestion that it may preclude a board from finding that a condition is a "direct medical sequela" by simply disputing its existence or connection to an accepted condition has no basis in the statutes, rules, or our case law. *See Office Depot, Inc.,* 195 Or App 756 (concluding that there was substantial evidence to support the board's finding of a "direct medical sequela" where the insurer disputed that fact); *Manley v. SAIF,* 181 Or App 431, 439, 45 P3d 1027 (2002) (remanding case to the board to determine the "preliminary factual issue[]" of whether the claimant's trigger finger is a "direct medical sequela" of the accepted condition where SAIF had argued below that the trigger finger condition was not a "direct medical sequela").

Here, there is substantial evidence to support the board's finding that claimant's myofascial pain syndrome is part of or a "direct medical sequela" of the accepted cervical strain. As the board noted, throughout his treatment of claimant, Hill consistently diagnosed her with myofascial pain syndrome and, on several occasions, described that syndrome as residual to or associated with her accepted cervical strain. Accordingly, the board did not err in treating that condition in the manner that it did.

Affirmed.