Argued and submitted March 16, reversed and remanded April 8, reconsideration denied June 12, petition for review denied June 30, 1987 (303 Or 590)

In the Matter of the Compensation of
John D. Schuening, Claimant.

SCHUENING,
*Petitioner,*

*v.*

J.R. SIMPLOT & COMPANY,
*Respondent.*

(85-00949; CA A40423)

735 P2d 1

David C. Force, Eugene, argued the cause for petitioner. On the brief was Kenneth D. Peterson, Jr., Hermiston.

Kenneth L. Kleinsmith, Portland, argued the cause for respondent. On the brief was Daniel L. Meyers, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Claimant seeks review of a Workers' Compensation Board order affirming the referee's decision that claimant's aggravation claim had not been prematurely closed.

Claimant suffered a compensable right ankle injury in July, 1983. The claim was closed by a determination order on May 4, 1984, and then reopened on June 1, 1984, on an aggravation claim. On October 1, 1984, Dr. Smith advised that, although claimant was still in pain and had other symptoms, there was nothing more that could be done for him from a medical standpoint. He stated that the ankle was medically stationary and recommended claim closure. Claimant was not satisfied that nothing more could be done and saw Smith's partner, Dr. Weeks. Weeks referred claimant to Dr. Graham, who examined him in January, 1985, and, after consultation with a radiologist and one of claimant's treating doctors, reported that claimant could either accept his disabling condition or try more aggressive treatment, which would involve surgery:

> "The patient has a choice, in my opinion of making the decision whether to accept his ankle as it is or to be aggressive in dealing with it. If he accepts it as it is, I think it is unlikely to show further improvement. Whether or not he will eventually grow worse is not clear to me. I think he would find it difficult, however, under his present circumstances to try to continue to work at jobs requiring long periods on his feet, working on rough or irregular ground and doing a lot of kneeling, squatting and carrying and lifting heavy loads.

> "Aggressive treatment, in my opinion, would consist of repeat surgery with adequate exposure of the medical dome of the talus and x-ray localization of the lesion within the talus with its removal and subsequent bone grafting. I believe this can only be accomplished by an osteotomy of the medial malleolus. Surgery itself may produce some additional stiffness and would produce a relatively long recovery and rehabilitation phase. In addition it is not completely clear that he could expect pain relief and I think this would depend to a certain extent on what, if anything, was found at the time of surgery and whether or not collapse of the dome of the talus, if resection is of sufficient size, could be prevented. It is possible this patient may eventually need to have an arthrodesis of the ankle."

In the meantime, the Evaluation Division closed the claim with a medically stationary date of October 1, 1984. Claimant elected to have the surgery, which employer authorized as reasonable and necessary. Employer reopened the claim as of April 1, 1985, the date of the surgery. On the theory that the claim was closed prematurely, claimant seeks temporary total disability from October 1, 1984, to the date when the claim was reopened.

Claimant testified at the hearing that his condition did not change from October 1, 1984, to the date of the surgery. The parties stipulated that, if Smith were to testify, he would state that he was "unaware of any factors that would have made surgery more necessary in January, 1985, than it was in October, 1984."

■ ORS 656.005(17) provides that "medically stationary" means that "no further material improvement would reasonably be expected from medical treatment, or the passage of time." In determining whether a claim was prematurely closed, we determine whether the claimant's condition was medically stationary on the date of closure, without considering subsequent changes in his condition. *Sullivan v. Argonaut Ins. Co.,* 73 Or App 694, 700 P2d 274 (1985); *Alvarez v. GAB Business Services,* 72 Or App 524, 696 P2d 1131 (1985). Here, the evidence indicates that claimant's condition did not change between the date of closure and the date of surgery. The only question, therefore, is whether the evidence before the referee shows that he was medically stationary on the date of closure.[1] Contrary to employer's contention, the referee and the Board properly considered medical evidence on that issue that was not available to the Evaluation Division at the time of closure. *See, e.g., Brown v. Jeld-Wen, Inc.,* 52 Or App 191, 627 P2d 1291 (1981).[2]

■ The referee stated that Graham's report supported

---

[1] This issue is not to be confused with whether penalties should be imposed for an "unreasonable" premature closure. That determination is based on the medical evidence available to the employer at the time of the alleged unreasonable closure. *Mt. Mazama Plywood Co. v. Beattie,* 62 Or App 355, 661 P2d 109 (1983).

[2] *But see Martin v. SAIF,* 77 Or App 640, 713 P2d 640, *rev den* 301 Or 240 (1986), which held that medical evidence submitted after closure is not considered. *Martin* relied on *Alvarez v. GAB Business Services, supra.* As we have said, *Alvarez* holds only that subsequent changes in the development of the claimant's condition are not considered.

the finding that claimant was medically stationary at the time of closure. We read the report differently. Graham was the first doctor to suggest that claimant might benefit from surgery. That treatment was not palliative, but was suggested for the purpose of improving claimant's ankle problem. Although, as the referee stated, there is no evidence that Weeks had "misdiagnosed" claimant's condition, Graham offered treatment that had not been proposed before and did so with a reasonable hope of further medical improvement. We conclude that claimant's condition was not medically stationary on the date of closure.

Reversed and remanded to the Board for a determination of benefits payable for October 1, 1984, to April 1, 1985.