Argued and submitted October 27, 2010, affirmed April 20, petition for
review denied October 6, 2011 (351 Or 216)

In the Matter of the Compensation of
Socorro Sanchez, Claimant.

Socorro SANCHEZ,
*Petitioner,*

*v.*

SAIF CORPORATION
and Dakine Hawaii, Inc.,
*Respondents.*

Workers' Compensation Board
0706188; A140387

255 P3d 592

Donald M. Hooton argued the cause and filed the briefs for
petitioner.

Julene M. Quinn argued the cause and filed the brief for
respondents.

Before Ortega, Presiding Judge, and Sercombe, Judge,
and Nakamoto, Judge.*

* Nakamoto, J., *vice* Landau, J. pro tempore.

NAKAMOTO, J.

## NAKAMOTO, J.

Claimant seeks review of an order of the Workers' Compensation Board (board) upholding an order on reconsideration of the Appellate Review Unit (ARU) of the Workers' Compensation Division of the Department of Consumer and Business Services (department), rescinding SAIF's June 7, 2007, notice of closure of claimant's claim. The board held that the notice of closure was premature, because there was insufficient information at the time of closure from which to determine impairment and disability with respect to claimant's compensable shoulder condition. Claimant contends that the notice of closure was not premature, because the evidence available to the ARU was sufficient to allow a determination of claimant's level of impairment and disability. This case involves a question of statutory interpretation, specifically, whether ORS 656.268(1)(a) requires that information sufficient to close a claim must be present at the time of closure or whether the information may be provided at the time of reconsideration of the notice of closure. We hold that the board did not err in concluding that the information must exist at the time of the notice of closure and affirm.

The facts are undisputed. In September 2005, claimant filed a workers' compensation claim for a left arm condition caused by lifting boxes and pallets at work. In October 2005, SAIF accepted a claim for a shoulder condition, "left shoulder subacromial bursitis," with a date of injury of August 8, 2005. In February 2006, SAIF modified its acceptance to include "left lateral epicondylitis," a condition of the elbow. Thus, claimant has two accepted conditions, for the left shoulder and the left elbow.

In April 2007, claimant submitted to a physical capacities evaluation with respect to her elbow. The evaluation revealed that claimant had diminished grip strength on the left, limitations with reaching forward, and an inability to engage in repetitive activity or to reach overhead. The physical therapist found similar limitations on the right side. In the "conclusions" section of the report, the physical therapist stated:

"Limitations in functional capacity for return to work regarding her elbow injury would include:

"1. Ongoing left elbow pain.

"2. Decreased strength at the left elbow musculature.

"3. Limited ability to lift and carry moderate to heavy loads.

"4. Inability to use the left upper extremity for repetitive activity and reaching overhead.

"5. Limited ability to push/pull with left arm.

"[Claimant's] ability to perform physical activities would place her in the sedentary to light range for activities up to shoulder level and in the sedentary range for activities above the shoulder level or at arm's reach."

On May 22, 2007, Dr. Sedgewick, claimant's attending physician, performed a closing examination for the elbow condition. Sedgewick found claimant's elbow to be medically stationary. He agreed with the findings of the physical capacities evaluation that claimant had "diminishment in function on a repetitive basis and problems with weights greater than 10 pounds."

On May 24, 2007, SAIF sent Sedgewick a letter asking Sedgewick to concur with the permanent findings and work capacities described in the physical capacity evaluation, or "provide your own closing exam with impairment findings due to the accepted left shoulder subacromial bursitis and left lateral epicondylitis." Sedgewick checked boxes indicating that he concurred in the findings outlined in the report.

On June 7, 2007, SAIF issued a notice of closure determining that claimant became medically stationary on May 22, 2007, and awarding permanent partial disability benefits, including 16 percent loss of the whole person for left arm impairment, as well as a work disability benefit. Claimant requested reconsideration of the notice of closure by the ARU, asserting that the claim had been prematurely closed because neither the closing examination nor the physical capacity evaluation provided ranges of motion for the shoulder and because she was entitled to additional benefits for permanent partial disability. Claimant also checked a box on the reconsideration request form indicating that she believed "the information used to determine permanent disability was

incorrect, incomplete, or unclear" and that additional information was being sought from the attending physician, pursuant to ORS 656.268(6)(a)(B).

On August 7, 2007, Sedgewick concluded that claimant's shoulder condition was medically stationary and that claimant's limitations on reaching and working above shoulder level were due to the accepted shoulder condition. Sedgewick stated that the limitations described in the May 22, 2007, physical capacities evaluation applied to both the elbow and the shoulder.

On August 13, 2007, claimant filed an amended request for reconsideration of the notice of closure, withdrawing her contention that she was not medically stationary on the date of closure and that the claim had been prematurely closed. She also withdrew her challenge to the impairment findings used to determine her permanent partial disability. She asserted that she should be awarded additional permanent partial disability based on chronic conditions that significantly limited the repetitive use of her left arm and left shoulder.

On August 23, 2007, the ARU issued an order on reconsideration rescinding the notice of closure as premature. The order concluded that, at the time of closure, there was no evidence that claimant's accepted left shoulder condition was medically stationary and the insurer had insufficient information from which to determine permanent disability. Claimant requested that the department abate and reconsider the order on reconsideration and subsequently filed a request for hearing challenging the order on reconsideration.

Claimant argued at the hearing that Sedgewick's finding on August 7, 2007, that claimant's left shoulder was medically stationary must relate back to Sedgewick's last examination of claimant on May 22, 2007, pursuant to OAR 436-035-0035(4). Claimant further argued that on reconsideration of a notice of closure, the ARU must consider evidence available after claim closure as to both claimant's medically stationary status *and* as to the sufficiency of information concerning her level of impairment to determine whether the claim was prematurely closed.

The ALJ agreed with claimant with respect to claimant's medically stationary status. Citing *Schuening v. J. R. Simplot & Company*, 84 Or App 622, 625, 735 P2d 1, *rev den*, 303 Or 590 (1987), the ALJ concluded that evidence that was not available at the time of closure could be considered in determining whether the accepted conditions were medically stationary at the time of closure. The ALJ concluded that the medical information available at the time of reconsideration established that both of claimant's accepted conditions were medically stationary before SAIF closed the claim on June 7, 2007. The ALJ explained that Sedgewick's August 7, 2007, finding that claimant's left shoulder condition was medically stationary related back to Sedgewick's last examination of claimant on May 22, 2007, pursuant to the relevant department administrative rule. *See* OAR 436-035-0035(4) ("The date of examination, not the date of the report, controls the medically stationary date.").

However, the ALJ disagreed with claimant with respect to the necessary informational foundation for rating claimant's impairment. The ALJ noted that ORS 656.268(1)(a) requires claim closure when "[t]he worker has become medically stationary and there is *sufficient information* to determine permanent disability." (Emphasis added.) A department administrative rule, OAR 436-030-0020(2), defines what constitutes "sufficient information" to determine permanent impairment.[1] The ALJ determined that, at

---

[1] OAR 436-030-0020(2) provides, in part:

"For purposes of determining the extent of disability, 'sufficient information' requires the following:

"(a) An authorized nurse practitioner's or attending physician's written statement that clearly indicates there is no permanent impairment, residuals, or limitations attributable to the accepted condition(s), and there is no reasonable expectation, based on evidence in the record, of loss of use or function, changes in the worker's physical abilities, or permanent impairment attributable to the accepted condition(s). If the attending physician or nurse practitioner indicates there is no impairment, but the record reveals otherwise, a closing examination and reports specified under (b) of this section are required; or

"(b) A closing medical examination and report when there is a reasonable expectation of loss of use or function, changes in the worker's physical abilities, or permanent impairment attributable to the accepted condition(s) based on evidence in the record or a physician's opinion. The closing medical examination report must describe in detail all measurements and findings regarding

the time of closure, SAIF did not have before it "sufficient information" as defined in the administrative rule to determine impairment for claimant's left shoulder.[2] Citing ORS 656.268(1)(a), OAR 436-030-0020(2), and the board's order in *Judith Brown*, 56 Van Natta 2213, *adh'd to on recons*, 56 Van Natta 2628 (2004), the ALJ further explained that the evidence that constitutes "sufficient information" must exist in the record at the time of claim closure, and that Sedgewick's August 7, 2007, report, therefore, did not establish that the information necessary to determine claimant's permanent disability was available on the date of closure.

On claimant's appeal, the board affirmed the ALJ's order. The board explained, also relying on its order in *Brown*, that a post-closure report cannot satisfy the requirement of "sufficient information" for purposes of claim closure. It is not enough, the board explained, that the information existed at the time of reconsideration. Under ORS 656.268(1)(a), as interpreted by the board in *Brown*, the information must have existed at the time of claim closure. The board concluded that "the appropriate time for determining whether sufficient information exists to close a claim is when the claim is closed, not during the reconsideration proceedings."

On judicial review, claimant acknowledges that she did not obtain measurements or findings for determining impairment for her shoulder before claim closure, but continues to assert that the department should not have rescinded its notice of closure. She contends that ORS 656.268(1)(a) and its context, specifically ORS 656.268(6)(a)(B), ORS 656.268(6)(b), and ORS 656.268(7)(b), show that the legislature contemplated that information about a claimant's level

---

any permanent impairment, residuals, or limitations attributable to the accepted condition(s) under OAR 436-010-0280 and 436-035[.]"

[2] The ALJ explained that, at the time of closure on June 7, 2007, SAIF did not have sufficient information under either OAR 436-030-0020(2)(a) or (b), from which to determine claimant's permanent disability with respect to the shoulder condition. That is so, the ALJ explained, because Sedgewick had not clearly stated in writing that there was no impairment, residual, or limitation attributable to the shoulder condition, OAR 436-030-0020(2)(a), or had not described "in detail all measurements and findings regarding any permanent impairment, residuals, or limitations attributable to the accepted condition(s) under OAR 436-010-0280 and 436-035." OAR 436-030-0020(2)(b).

of impairment submitted to the ARU during the reconsideration process may be used to determine whether a claim was prematurely closed.

In relevant part, ORS 656.268 provides:

"(1)   * * * The insurer or self-insured employer shall close the worker's claim, as prescribed by the Director of the Department of Consumer and Business Services, and determine the extent of the worker's permanent disability * * * when:

"(a)   The worker has become medically stationary and there is sufficient information to determine permanent disability;

"* * * * *

"(5)   * * *

"(e)   If, upon reconsideration of a claim closed by an insurer or self-insured employer, the director orders an increase by 25 percent or more of the amount of compensation to be paid to the worker for permanent disability and the worker is found upon reconsideration to be at least 20 percent permanently disabled, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant. *If the increase in compensation results from information that the insurer or self-insured employer demonstrates the insurer or self-insured employer could not reasonably have known at the time of claim closure, from new information obtained through a medical arbiter examination or from a determination order issued by the director that addresses the extent of the worker's permanent disability that is not based on the standards adopted pursuant to ORS 656.726(4)(f), the penalty shall not be assessed.*

"(6)(a)   * * * At the reconsideration proceeding:

"(A)   * * *

"(B)   Pursuant to rules adopted by the director, *the worker or the insurer or self-insured employer may correct information in the record that is erroneous and may submit any medical evidence that should have been but was not submitted by the attending physician or nurse practitioner*

*authorized to provide compensable medical services under ORS 656.245 at the time of claim closure.*

"(C) If the director determines that a claim was not closed in accordance with subsection (1) of this section, the director may rescind the closure.

"(b) If necessary, *the director may require additional medical or other information with respect to the claims* and may postpone the reconsideration for not more than 60 additional calendar days.

"* * * * *

"(7)(a) * * *

"(b) If neither party requests a medical arbiter and the director determines that *insufficient medical information is available to determine disability, the director may refer the claim to a medical arbiter appointed by the director.*"

(Emphasis added.) In claimant's view, the quoted subsections, the italicized portions in particular, show that the legislature sought to avoid the reopening of closed claims and contemplated that the determination of whether a claim was prematurely closed could be made based on evidence before the ARU in the reconsideration proceeding, including additional evidence allowed and submitted during the reconsideration proceeding pursuant to ORS 656.268. Therefore, claimant concludes, the body of information sufficient to determine permanent disability and that gives rise to an obligation to close a claim under ORS 656.268(1)(a) may be supplied during the reconsideration proceeding. The resolution of that question is a matter of statutory construction, to which we apply the familiar methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), as amplified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009).

In our view, by stating that a claim shall be closed *"when * * * [t]he worker has become medically stationary and *there is* sufficient information to determine permanent disability,"* (emphasis added), ORS 656.268(1)(a) unambiguously requires that the "sufficient information" necessary to close the claim be present at the time of the insurer's claim

closure. That reading of the text of ORS 656.268(1)(a) is supported by viewing that subsection within the context of the statute as a whole.

The statute provides for claim closure on grounds other than those stated in ORS 656.268(1)(a). *See* ORS 656.268(1)(b) - (d). It also provides a process for requesting claim closure and contesting the failure of an insurer to close a claim. *See* ORS 656.268(5)(b), (d). A claim closure may give rise to numerous issues that may be contested by the parties under ORS 656.268. In particular, if a notice of closure is based on ORS 656.268(1)(a), as in this case, the claimant may object that the claim was closed prematurely, or the claimant may object to the rating of disability, or both. An insurer or self-insured employer may object to the findings used to rate impairment in the notice of closure. ORS 656.268(5)(c). To make any objection, a claimant, insurer, or self-insured employer must request reconsideration by the department. ORS 656.268(5)(c).

As claimant notes, the reconsideration process allows for correction and supplementation of the information used to close the claim. *See* ORS 656.268(6)(a)(B) (insurer or claimant may correct record or submit medical evidence that should have been submitted at time of claim closure); ORS 656.268(6)(b) (department director may require additional information); ORS 656.268(7)(b) (director may refer claim to medical arbiter even if no party objects to determination of disability). But the problem with claimant's reliance on those provisions is that she assumes that because in some circumstances the statute permits consideration of evidence adduced during the reconsideration proceeding to determine certain issues, the legislature intended to allow the use of any such evidence to determine all issues that may be associated with claim closure under ORS 656.268.

As noted, in affirming the ALJ, the board relied in part on its order in *Brown*. The board in *Brown* had ruled that the department could not consider supplemental evidence from a medical arbiter on the issue of sufficiency of information at the time of claim closure. The board in that case had explained that to do so would make little sense when, under ORS 656.268(7), a medical arbiter is always

appointed *after* a claim closure, when a concern is raised with the impairment findings used in the notice of closure. *Brown*, 56 Van Natta at 2629. As the board concluded in *Brown*, the structure of the reconsideration proceeding provided for in the statute, coupled with the plain language of ORS 656.268(1)(a), indicates that the legislature did not intend that in every reconsideration of a claim closure, any new information available at the time must be considered, no matter what the contested issue may be.

Information provided on reconsideration pursuant to those provisions claimant relies on in ORS 656.268 might indeed indicate that the claimant's disability was not properly rated in the notice of closure, or that the claimant was not medically stationary at the time of closure. However, the addition of further medical opinions or reports prepared regarding the claimant's impairment after the claim closure, as in the present case, does not inform the determination of whether, at the time of closure, the insurer actually had "sufficient information" with which to establish the claimant's impairment and therefore obligate it to close the claim. Whether a claim was properly closed must be based on the body of information actually available at the time of closure, because, pursuant to ORS 656.268(1)(a), the claim may be closed only when "there is" (as opposed to could have been) sufficient information for the insurer to close that claim. Thus, we reject claimant's contention that the measurement of whether "sufficient information" existed to determine permanent impairment and to close a claim may be based on additional information provided during the reconsideration proceeding, if sufficient information did not exist when the claim was closed.

As noted, the department has set forth in OAR 436-030-0020(2) what constitutes "sufficient information" to close a claim. The board's finding that the evidence in existence at the time of closure was not sufficient to close the claim is supported by substantial evidence, and we therefore affirm the board's determination that the claim was prematurely closed.

Affirmed.