Argued and submitted June 3, affirmed July 8, 2004

In the Matter of the Compensation of
Zoya M. Khrul, Claimant.

Zoya M. KHRUL,
*Petitioner,*

*v.*

FOREMANS CLEANERS
and Farmers Insurance Company,
*Respondents.*

01-09944; A121256

93 P3d 820

James Dodge argued the cause and filed the brief for petitioner.

James W. Moller argued the cause for respondents. With him on the brief was Scheminski & Lyons, LLP.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Claimant seeks review of an order of the Workers' Compensation Board finding that she has no permanent disability. Claimant asserts that the board erred as a matter of law in rejecting the impairment rating of the medical arbiter who rated her impairment at 35 percent. We conclude that the board did not err and that its order is supported by substantial evidence. We therefore affirm.

Claimant suffers from depression caused by the stress of her employment. She quit her job with employer in 1998 and has not worked since that time. She first sought treatment for depression in 1997 and filed a claim in 1998. Insurer contested the claim, but it was ordered to accept in March 2000. Insurer closed the claim on July 3, 2000, by "administrative closure" pursuant to OAR 436-030-0034, based on claimant's failure to seek medical treatment since September 1998. Insurer made no award of permanent disability, and claimant sought reconsideration. At claimant's request, the Department of Consumer and Business Services (DCBS) appointed Dr. Bennington-Davis, a psychiatrist, as a medical arbiter to rate claimant's level of impairment. Bennington-Davis conducted an evaluation and opined in August 2000 that claimant was not yet medically stationary. The parties agreed to postpone the reconsideration process until such time as claimant's condition was medically stationary.

In March 2001, claimant's attending physician, Dr. Black, reported that claimant was medically stationary and released her for regular work. He said, however, that claimant's impairment was "undetermined." He wrote that claimant was doing much better, but that the long-term prognosis was uncertain. The parties agree that the claim is now appropriate for closure and that the only dispute concerns the rating of claimant's permanent impairment, if any.

In October 2001, the deferred reconsideration process was reactivated, and DCBS appointed Dr. Friedman, a psychiatrist, as a medical arbiter to establish claimant's level of impairment. On a form provided by DCBS, Friedman was

asked to "report any objective permanent impairment resulting from the accepted psychological condition only." (Underscoring in original.) In the paragraph entitled "Ongoing treatment required, if any," Friedman wrote:

> "[Claimant] clearly is in need of treatment. The catch is that I rather doubt that she will respond to treatment well until this workers' compensation claim is closed and behind her. * * * A combination of antidepressant medication, claim closure and some supportive psychotherapy to help [claimant] start looking toward her future with a positive attitude would be my recommendation. *I would expect that once her claim is closed she may well respond to treatment and come out of her depression within about three months.*"

(Emphasis added.) In the next paragraph, entitled "Diagnosis and prognosis," Friedman wrote:

> "I have diagnosed [claimant], as have others, with a major depression. Depression is a treatable condition and tends to resolve itself in the majority of individuals with the passage of time alone. In [claimant's] case, I believe that the ongoing stress she experiences as a result of being enmeshed in her worker's compensation claim has perpetuated her depression and interfered with the effectiveness of prior treatment attempts. *If it were possible to close her claim and still have financial coverage for treatment, I would expect her prognosis to be very good for full or nearly full emotional recovery.* She may continue to have some chronic pain which interferes with her ability to function fully in a work setting."

(Emphasis added.) In the concluding paragraph, Friedman was asked to "refer to the attached Mental Illness Standards [set forth in OAR 436-035-0040] and, considering any impairment the worker may have, identify a specific class into which the worker would fall." Friedman wrote:

> "*At this time*, I would rate [claimant] as falling into Class 2, moderate (35%) of impairment for depressive symptoms. This class requires that her symptoms have lasted for several weeks whereas hers have lasted for several years. It also states that there were disturbances in eating and sleeping patterns, both of which she has experienced, having lost twenty-five pounds and continuing to experience insomnia on a regular basis. As specified, she has also lost interest in her usual activities and there does appear to be

moderate retardation of physical activity. In this class self-care activities and personal hygiene remain good as appears to be the case in [claimant's] condition. I gave her the moderate rating in this class because of the duration of her symptoms and the extreme extent to which they have altered her life."

(Emphasis added.) The Appellate Review Unit of the Workers' Compensation Division of DCBS reviewed Friedman's report and rating of claimant's disability. After considering the factors required by the formula set out in OAR 436-035-0280, the Appellate Review Unit determined that claimant is entitled to an award of 55 percent permanent partial disability.

Insurer requested a hearing challenging the award, specifically the determination that claimant suffers from permanent impairment due to her depression. In insurer's view, Friedman's report indicates that claimant's current symptoms are not due to her compensable condition, but rather to the stress of the pending workers' compensation claim. The administrative law judge (ALJ) said that, despite Friedman's comments that claimant could experience full or near full recovery within three months of closure, the fact that Friedman rated claimant's impairment at 35 percent indicates that Friedman believed that claimant has permanent impairment attributable to the compensable condition.

The board reversed the ALJ. The board concluded that the record, including Friedman's report, simply did not establish that claimant has *permanent* impairment. The board observed that Black, claimant's attending physician, did not rate claimant's impairment. "Thus," the board said, "claimant's entitlement to permanent disability rests on the opinion of the medical arbiter, Dr. Friedman." The board said that Friedman's opinion fell short of establishing permanent impairment caused by the compensable condition because the "causation" portion of Friedman's overall impairment rating failed to differentiate between claimant's impairment due to claims processing issues and impairment caused by the compensable depression condition. Citing its order in *Marcia G. Williams*, 49 Van Natta 313, *adh'd to on recons*, 49 Van Natta 612 (1997), the board said that, because

Friedman's report attributed claimant's impairment to causes other than the compensable injury, it is not persuasive evidence of injury-related impairment. The board concluded, therefore, that Friedman's report failed to establish the permanent nature of claimant's impairment due to the accepted depression condition. Because there is no other medical opinion that establishes that claimant has permanent impairment resulting from the accepted psychological condition, the board held that claimant is not entitled to an award for unscheduled permanent disability.

We begin our analysis with a discussion of the pertinent statutes and administrative rules. ORS 656.268(7) provides that, when a claimant challenges the impairment findings in a notice of closure, the claim is referred to a medical arbiter, ORS 656.268(7)(a), and the findings of the arbiter are submitted to the director for reconsideration of the notice of closure. ORS 656.268(7)(g). Before it was amended in 2003, OAR 436-035-0007(14) (1999) provided, in part:

> "On reconsideration, where a medical arbiter is used, impairment is established by the medical arbiter, except where a preponderance of medical opinion establishes a different level of impairment. Where a preponderance establishes a different level of impairment, the impairment is established by the preponderance of evidence."

(Emphasis added.) Under OAR 436-035-0007(14) (1999), the director on reconsideration is required to accept a medical arbiter's opinion of impairment unless a preponderance of the medical opinion establishes a different level of impairment. The board, in reviewing the director's order on reconsideration, is not free to make its own evaluation of the record to determine a claimant's impairment. It, too, must accept the opinion of the medical arbiter unless other medical opinion establishes a different level of impairment. It follows that, when the medical arbiter's opinion provides the only medical opinion concerning impairment, that opinion must be used to establish the level of impairment.

Implicit in OAR 436-035-0007(14) (1999), however, is the requirement that the rated impairment is compensable, *i.e.*, caused by the accepted condition. OAR 436-035-0007(1) (1999) provides that "a worker is entitled to a value under the

rules only for those findings of impairment that are permanent and were caused by the accepted compensable condition." Accordingly, the medical evidence on which the director relies in support of a determination of permanent impairment must also establish that the impairment is caused by the compensable condition. *See SAIF v. Danboise*, 147 Or App 550, 552, 937 P2d 127, *rev den*, 325 Or 438 (1997) (when record discloses no other possible source of impairment, medical evidence that rates impairment and describes it as "consistent with" the compensable injury supports a finding that the impairment is due to the compensable injury). To conclude otherwise would bring the administrative rule into conflict with the statutes. *See* ORS 656.214(5) ("criteria for rating disability shall be the permanent loss of earning capacity due to the compensable injury"); ORS 656.726(4)(f)(A) ("criteria for evaluation of disabilities under ORS 656.214(5) shall be permanent impairment due to the industrial injury"). As the board has held in a number of its orders, a medical arbiter's report that rates impairment but that attributes the impairment to causes other than the compensable injury does not establish a compensable permanent disability. Thus, although in the absence of other medical opinion the board is required to use a medical arbiter's rating of impairment, it must nonetheless be satisfied that the report rates impairment caused by the compensable condition.

■　　Here, Friedman determined that claimant's impairment was 35 percent; she also opined that claimant's current symptoms were likely caused by the stress of the ongoing claim and that with treatment claimant's impairment "may well" resolve within three months of claim closure. There is no other medical evidence concerning claimant's level of impairment. The question that this case presents is whether that report necessarily requires the finding that claimant has compensable permanent impairment. We conclude that the answer is no.

Friedman's report was ambiguous as to whether claimant's impairment was due to the compensable condition or to the stress of claims processing. On the one hand, Friedman was asked to rate claimant's "impairment resulting from the <u>accepted psychological condition only</u>," and she

said that claimant's impairment "at this time" is 35 percent. (Underscoring in original.) It is possible to infer that Friedman followed the form's instruction and that the reported 35 percent impairment was permanent impairment resulting from the accepted psychological condition. On the other hand, Friedman explained that claimant's depression had been perpetuated by the pendency of the claim and that her symptoms could resolve within three months of claim closure. Friedman's written explanation permits an inference that, although claimant had impairment at the time of rating, Friedman believed that the impairment was not permanent or caused by the compensable condition and would resolve after claim closure. Because of the internal ambiguity, it was necessary for the board to interpret the opinion to determine whether it established that claimant had permanent impairment due to the compensable condition. The board concluded that the report does not support a finding that claimant has compensable permanent impairment. We conclude that the board's interpretation of Friedman's report is reasonable. Accordingly, we hold that the board's finding that claimant has not established that she has permanent disability is supported by substantial evidence.

Affirmed.