Argued and submitted December 7, 2010, reversed and remanded
for reconsideration June 1, 2011

In the Matter of the Compensation of
Michael L. Shults, Claimant.

## MULTNOMAH COUNTY,
*Petitioner,*

*v.*

Michael L. SHULTS,
*Respondent.*

Workers' Compensation Board
0807243; A143577

258 P3d 1263

Deborah L. Sather argued the cause for petitioner. With her on the briefs were Rebecca A. Watkins and Sather Byerly & Holloway, LLP.

James Moller argued the cause for respondent. On the brief were Raymond W. Myers and Ray Myers, PC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Employer Multnomah County seeks review of an order of the Workers' Compensation Board affirming an award of permanent partial disability to claimant. *See* ORS 656.214(2) (2007); OAR 436-035-0007 (Jan 1, 2006).[1] Employer argues, *inter alia*, that the board's order is based on an inference that is not supported by substantial reason. Specifically, employer argues that the board's inference that a medical arbiter panel found that claimant's impairments were due to his accepted condition is not supported by substantial reason. For the reasons explained below, we agree and reverse and remand.

Claimant, a lieutenant with the Multnomah County Sheriff's Department, suffered a myocardial infarction, more commonly known as a heart attack, following a strenuous aquatic training session. The emergency department doctor who treated claimant diagnosed him with a "myocardial infarction due to critical coronary artery disease." Claimant's attending physician estimated that claimant had had coronary artery disease for one to three years before the myocardial infarction and the coronary artery disease was "moderate/severe." According to claimant's attending physician, "[c]oronary artery disease is the cause of myocardial infarction," and it would have been very "rare" and "unusual" for claimant's myocardial infarction to not have been caused by his coronary artery disease.

Claimant had not been diagnosed with coronary artery disease before the myocardial infarction and, although claimant had experienced chest pains for approximately two weeks before the myocardial infarction, he had not sought treatment for coronary artery disease or chest pain before the myocardial infarction.

Claimant asked employer to accept the myocardial infarction as a work-related injury. Initially, employer refused

---

[1] We refer to the 2007 version of all statutes. Although statutory amendments since have not materially changed the provisions at issue, this dispute arose under 2007 statutes, and therefore the 2007 version governs our analysis.

Similarly, all administrative rules cited in this opinion are those effective January 1, 2006.

on the ground that claimant's coronary artery disease was a preexisting condition and his coronary artery disease, not his work activity, was the major contributing cause of his myocardial infarction and resulting disability and need for treatment. *See* ORS 656.005(7)(a)(B); ORS 656.245(1)(a). After an administrative law judge (ALJ) determined that claimant's coronary artery disease was not a legally cognizable preexisting condition because claimant had not sought treatment for it before suffering the myocardial infarction, *see* ORS 656.005(24)(a), and that claimant's work activity was a material contributing cause of his myocardial infarction, *see* ORS 656.005(7)(a), employer accepted claimant's myocardial infarction as a compensable injury.[2]

Claimant received treatment for the myocardial infarction and returned to his regular duties on a full-time basis approximately two months after the myocardial infarction. After claimant ceased treatment for the myocardial infarction, employer sent claimant a notice that it intended to close his claim. Claimant did not arrange for a closing examination by his attending physician. As a result, claimant's claim was administratively closed without any rating of permanent impairment caused by the accepted myocardial infarction. *See* OAR 436-030-0034. Employer sent claimant a notice of closure, awarding him temporary disability but not permanent partial disability.

Claimant requested reconsideration by the Department of Consumer and Business Services' Appellate Review Unit (ARU). *See* ORS 656.268(5)(c). The ARU appointed a medical arbiter panel to examine claimant and rate his impairments, if any. *See* ORS 656.268(7). The ARU sent the panel a form, which instructed the panel to review claimant's medical records, examine claimant, and answer questions relating to the condition of claimant's cardiovascular system. The form instructed the panel to "describe the findings of permanent impairment" for five "disease processes": coronary artery disease, hypertensive cardiovascular disease, cardiomyopathy, pericardial disease, and

---

[2] Employer also accepted pneumonia, as a consequential condition, and the acceptance was later amended to include microsmia (loss of smell). Neither of those conditions is at issue in this appeal.

arrhythmias. The form set out criteria for the panel to use to rate impairment for each of the disease processes. *See* OAR 436-035-0380. The form also stated:

> "In addition to describing any objective findings of permanent impairment resulting from the accepted condition(s), your report should include a **summary of the worker's medical history in this claim**. It is particularly important that you **identify any pre-existing, denied or unrelated** conditions and, if appropriate, **distinguish between those findings due to the accepted conditions and any direct sequelae versus those that are not related**."

(Boldface in original.) And the form stated:

> "If the findings are due to the accepted condition(s) **AND** due to other unrelated conditions, provide, based on your medical judgment, the **percentage** of the findings or the specific findings that are due to the accepted condition(s)."

(Capitalization and boldface in original.)

The arbiter panel issued a report that included opinions regarding claimant's permanent impairment with respect to each of the five disease processes listed on the ARU's form. The report states:

> "*With regard to the CARDIOVASCULAR SYSTEM and related to the accepted condition of myocardial infarction, the following opinions were made.*
>
> "a. Coronary artery disease: With regard to coronary artery disease, impairment is rated as Class II based on the fact the worker has a history of myocardial infarction which has been documented by appropriate studies and that at the time of this evaluation, the worker has no symptoms while performing ordinary daily activities or moderately heavy physical exertion, and the worker requires moderate dietary adjustment and medication to prevent angina or remain free of signs and symptoms of congestive heart failure, and the worker has been able to perform a treadmill and obtain 90 percent of his predicted heart rate without developing significant ST segment shift, ventricular tachycardia, or hypotension.
>
> "\* \* \* \* \*

"c. Cardiomyopathy: With regard to the diagnosis of cardiomyopathy, impairment rating of Class I, based on the fact that the worker is asymptomatic and has evidence of impaired left ventricular function from laboratory studies (cardiac catheter of May 19, 2006 and thallium stress test of June 19, 2006), and there is no evidence of congestive heart failure or cardiomegaly on physical examination."

(Capitalization in original; emphasis added.) Thus, the report states the panel's opinions regarding conditions "related to" the accepted myocardial infarction and rates his coronary artery disease impairment as Class II and his cardiomyopathy impairment as Class I.

Based on the panel's report, the ARU issued an order on reconsideration awarding claimant permanent partial disability (PPD) for coronary artery disease and cardiomyopathy. Employer requested a hearing, arguing that claimant was not entitled to PPD for his coronary artery disease and cardiomyopathy impairments because they were not due to the accepted myocardial infarction.

An ALJ affirmed claimant's PPD award, concluding that claimant's coronary artery disease and cardiomyopathy impairments were due to claimant's accepted myocardial infarction. In affirming the award, the ALJ relied on the arbiter panel's report. Although the ALJ found the report "brief and conclusory," he interpreted it to include a finding that "claimant's coronary artery disease and cardiomyopathy were the result of his accepted myocardial infarction." The ALJ reasoned:

"The panel's conclusion was given in the context of specific instructions provided to the panel by the [ARU]. Among those instructions was to determine claimant's impairment based only on his accepted conditions and any direct medical sequela. On this record, the panel did that."

On reconsideration at employer's request, the ALJ adhered to and republished his prior order, with supplementation.

Employer sought board review, and the board adopted and affirmed the ALJ's order as reconsidered, with its own supplementation. Like the ALJ, the board found that the arbiter panel had found that claimant's coronary artery

disease and cardiomyopathy were due to the accepted myocardial infarction. The board based its finding on the fact that, when introducing its opinions regarding claimant's impairment, the panel stated, "With regard to the cardiovascular system and *related to* the accepted condition of myocardial infarction, the following opinions were made." (Capitalization omitted; emphasis added.) The board found that, in light of the instructions given to the panel, the panel's statement was an "unambiguous" finding that claimant's coronary artery disease and cardiomyopathy were the "direct medical sequelae" of claimant's accepted myocardial infarction. *See* ORS 656.268(14); OAR 436-035-0005(6). From there, the board concluded that it was required, under *Hicks v. SAIF*, 194 Or App 655, 659, 96 P3d 856, *adh'd to as modified on recons*, 196 Or App 146, 100 P3d 1129 (2004), to accept the panel's impairment findings. The board stated that, under *Hicks*, it "[was] not free to disregard a medical arbiter's impairment findings when the arbiter unambiguously attributes the claimant's permanent impairment to the compensable condition." This judicial review followed.

On review, employer raises two assignments of error. First, employer argues that the board misinterpreted the statutes and rules regarding PPD awards and erroneously concluded that claimant did not have to prove that his impairments were due to his accepted myocardial infarction. Second, and alternatively, employer argues that, if the board found that claimant's coronary artery disease and cardiomyopathy were due to his accepted myocardial infarction, that finding is not supported by substantial evidence because it is based on an inference—specifically, that the medical arbiter panel found that claimant's coronary artery disease and cardiomyopathy were due to his accepted myocardial infarction—that is not supported by substantial reason.

We reject employer's first argument. As the board's order indicates, the board understood that "the issue is the extent of [claimant's] permanent disability due to the accepted myocardial infarction." The board set out the relevant statutes and rules, considered whether there was medical evidence that claimant's coronary artery disease and cardiomyopathy were due to the accepted myocardial infarction,

and found that there was such evidence, specifically, the arbiter panel's report.

That leads us to employer's second argument, that the board's inference that the arbiter panel found that claimant's coronary artery disease and cardiomyopathy were caused by the accepted myocardial infarction is not supported by substantial evidence.

We begin our analysis with the relevant statutes and rules. A claimant is entitled to a PPD award when "permanent partial disability *results from* a compensable injury or occupational disease." ORS 656.214(2) (emphasis added). If, as in this case, a claimant has returned to regular work at the job held at the time of injury, the PPD award "shall be for impairment only." *Id.* " 'Impairment' means the loss of use or function of a body part or system *due to* the compensable industrial injury or occupational disease * * *." ORS 656.214(1)(a) (emphasis added). Impairment includes loss of use or function "caused by the accepted compensable condition and direct medical sequela." OAR 436-035-0007(1). " 'Direct medical sequela' means a condition which originates or stems from the compensable injury or disease that is clearly established medically." OAR 436-035-0005(6).

A claimant bears the burden of proving the nature and extent of his or her impairment. ORS 656.266(1). Impairment is established based on objective findings of the attending physician. OAR 436-035-0007(5). A claimant who disagrees with the impairment findings in his or her notice of closure can request reconsideration, which triggers a referral to a medical arbiter panel. ORS 656.268(7)(a). As a general matter, on reconsideration, the arbiter's report will establish the claimant's impairment. OAR 436-035-0007(5) provides, in part:

> "[W]here a medical arbiter is used, impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used."

Implicit, however, in OAR 436-035-0007(5) "is the requirement that the rated impairment is compensable," *i.e.*,

permanent and caused by the compensable injury. *Khrul v. Foremans Cleaners*, 194 Or App 125, 130-31, 93 P3d 820 (2004) (so holding with respect to OAR 436-035-0007(5)'s similarly worded predecessor). "[A] medical arbiter's report may be rejected if it does not rate permanent impairment caused by the compensable condition." *Hicks*, 196 Or App at 150-51. Thus, "[w]hen the medical arbiter's opinion is ambiguous as to whether the impairment is permanent or caused by the compensable condition," the opinion must be interpreted "to determine whether it rates permanent impairment caused by the compensable condition." *Id*. at 151.

In this case, the medical arbiter panel's report does not state that claimant's impairments are due to his myocardial infarction. As set forth above, the panel's only statement about the relationship between its impairment findings and the accepted myocardial infarction is the sentence it uses to introduce its findings regarding all of the cardiovascular disease processes. Again, that sentence is, "With regard to the cardiovascular system and *related to* the accepted condition of myocardial infarction, the following opinions were made." (Capitalization omitted; emphasis added.) At most, the panel simply describes the impairments as "related to" the myocardial infarction. That description, in and of itself, does not establish the required causal connection for a PPD award. It is ambiguous. As both parties acknowledge, it could mean that claimant's coronary artery disease and cardiomyopathy caused his myocardial infarction or it could mean that his myocardial infarction caused his coronary artery disease and cardiomyopathy. Thus, the *Hicks* rule—that the board must accept an unambiguous finding of permanent impairment caused by an accepted condition—does not apply in this case. *See Hicks*, 194 Or App at 657-59 (holding that the arbiter report was unambiguous where the arbiter twice reported that the claimant's impairment was "100 percent" due to his accepted condition).

As described above, the board interpreted the panel's report as rating impairment caused by claimant's accepted myocardial infarction. Specifically, the board inferred that the panel found that claimant's coronary artery disease and cardiomyopathy were the direct medical sequelae of his accepted myocardial infarction. The question

is whether that inference is supported by substantial evidence.

An inference consists of two parts: the primary fact or facts and a deduction. *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981). When reviewing an inference, we first determine whether the primary fact or facts are supported by substantial evidence, that is, whether a reasonable person viewing the record as a whole, could find the primary fact or facts. *Id.* We then determine whether the deduction made from the fact or facts is reasonable. *Id.* Thus, "[i]t is a twofold review for substantial evidence and, in a sense, for 'substantial reason[.]' " *Id.*

*SAIF v. Alton*, 171 Or App 491, 16 P3d 525 (2000), illustrates this approach. In *Alton*, as in this case, an arbiter rated the claimant's impairment, but did not state that the impairment was due to the claimant's accepted condition. The board inferred that the arbiter had found the required causal connection and, on appeal, we considered whether that inference was supported by substantial evidence and substantial reason. *Id.* at 495-96.

The facts in *Alton* were as follows: The claimant fell at work and suffered injuries to his face and head. After treatment of his physical injuries, the claimant complained of, among other problems, headaches, moodiness, dizziness, and memory and cognitive problems. *Id.* at 493. Because the claimant had a history of alcohol abuse and emotional and personality issues, the parties disputed whether the claimant's complaints were caused by his work fall. The claimant sought PPD and was denied those benefits. He requested reconsideration. *Id.* at 493-94. An arbiter issued a report rating the claimant's impairment and, based on the report, an ALJ held that the claimant was entitled to PPD. Although the arbiter's report did not expressly attribute the claimant's impairment to his fall, the ALJ reasoned that, because the arbiter had reviewed the claimant's medical records and had not attributed his impairments to any of the other possible causes, the arbiter must have determined that the impairments were caused by the claimant's fall. The board agreed; like the ALJ, the board inferred that the arbiter had made the required determination of causation. *Id.* at 495-96.

On review, we reviewed the board's inference. We first identified the two primary facts on which the board based the inference: "(1) [the arbiter] was aware of possible noncompensable causes for claimant's condition; and (2) [the arbiter] did not say that claimant's impairment was attributable to those other possible causes." *Id.* at 501. We explained that the board

"inferred causation from [the arbiter's] report because [the arbiter] 'presumably' had reviewed claimant's medical records and nevertheless did not attribute claimant's condition to anything other than the compensable injury. In essence, [the arbiter's] silence on causation was the 'fact' from which the Board inferred that he formed a medical opinion that claimant's impairment was, to a medical probability, attributable to the compensable injury."

*Id.* at 500.

We then considered the inference the board drew from those facts and concluded that the board's logic was "faulty":

"The Board's reasoning appears to be: if [the arbiter] knew about other possible causes, and if he did not say that claimant's impairment was attributable to the other causes, then he must have concluded that claimant's impairment was not attributable to those causes. That reasoning simply is faulty. No principle in logic declares that if several things are possible, and none is selected as being probable, then a specific one of the possible things must be more probable than the others."

*Id.* at 501-02.

This case is similar to *Alton* in that the arbiter panel knew that there were other possible causes for claimant's impairment but did not expressly attribute claimant's impairment to his accepted condition or the other possible causes. Here, the board found two primary facts: (1) that the arbiter panel described claimant's impairments as "related to" the accepted myocardial infarction and (2) that the panel had been given specific instructions, including the instruction to "identify any pre-existing, denied or unrelated conditions and, if appropriate, distinguish between those findings

due to the accepted conditions and any direct sequelae versus those that are not related." (Boldface omitted.)

From those facts, which are undisputed, the board inferred that the panel found that claimant's coronary artery disease and cardiomyopathy impairments were fully attributable to the accepted myocardial infarction. In other words, the board inferred that the panel followed the instructions and performed the task of determining whether claimant's impairments were fully attributable to his accepted myocardial infarction, and therefore, when the panel described the impairments as "related to" the accepted myocardial infarction, it actually meant "due to" the accepted myocardial infarction.

Employer argues that, in this case, the board's inference that the arbiter panel followed the instructions is not reasonable. We agree. Although in some cases it may be reasonable to infer that an arbiter followed instructions from the ARU, *see Khrul*, 194 Or App at 131-32, it is not here. The instructions directed the panel to identify any preexisting, denied, or unrelated conditions. They also directed the panel that, if it found impairment due to the accepted condition and other unrelated conditions, it needed to identify the percentage of the impairment due to the accepted condition.

As the instructions indicate, a necessary first step to determining whether a claimant's impairment is due to an accepted condition is to identify other possible causes, such as preexisting, denied, or unrelated conditions. Here, the record is replete with undisputed medical evidence that claimant had coronary artery disease before he suffered the myocardial infarction. The evidence from claimant's doctors was that claimant had had coronary artery disease for one to three years before the myocardial infarction, that his coronary artery disease was moderate to severe, and that his coronary artery disease caused his myocardial infarction, specifically, that he suffered a "myocardial infarction due to critical coronary artery disease." Despite that evidence, the panel did not identify the coronary artery disease claimant had before the myocardial infarction as either a preexisting condition or an unrelated condition. That is, it did not identify the coronary artery disease that claimant had before the myocardial

infarction as a possible cause of his coronary artery disease impairment. Because the panel did not follow the instructions regarding the identification of possible causes of impairment, it cannot reasonably be inferred that the panel followed the instructions regarding the attribution of the impairment among possible causes. In other words, given that the panel did not identify the coronary artery disease claimant had before the myocardial infarction as a preexisting condition or an unrelated condition, it cannot reasonably be inferred that, when rating claimant's coronary artery disease impairment, the panel distinguished between impairment due to the coronary artery disease claimant had before the myocardial infarction, on the one hand, and impairment due to the myocardial infarction itself, on the other hand.

Indeed, there is nothing in the arbiter panel's report that indicates that the panel performed the required task of determining the cause of claimant's coronary artery disease impairment, or, for that matter, his cardiomyopathy impairment. All the report indicates is that the panel simply determined impairment for each of the five disease processes listed on the ARU's form; it does not indicate that the panel took the additional step of determining how much of that impairment was attributable to the accepted myocardial infarction. Therefore, we conclude that the board's inference that the arbiter panel found that claimant's coronary artery disease and cardiomyopathy were fully attributable to the accepted myocardial infarction is not supported by substantial reason.

Reversed and remanded for reconsideration.