Argued and submitted January 8, 2016, reversed and remanded for reconsideration July 6, 2017

In the Matter of the Compensation of
Mary M. Harvey, Claimant.

Mary M. HARVEY,
*Petitioner,*

*v.*

SAIF Corporation
and Oregon Health And Science University,
*Respondents.*

Workers' Compensation Board
1300339; A157541

398 P3d 944

James S. Coon argued the cause for petitioner. With him on the briefs was Swanson Thomas, Coon & Newton.

David L. Runner argued the cause and filed the brief for respondents.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Claimant fell at work and suffered various compensable injuries, including a concussion. She was awarded permanent partial disability with a Class 2 rating for cognitive impairment related to the concussion. SAIF requested reconsideration of that award and the Appellate Review Unit (ARU) reduced the cognitive impairment rating to a Class 1 based on the opinion of the medical arbiters. Claimant sought administrative review of that decision, and an administrative law judge (ALJ) and the Workers' Compensation Board (board), in turn, upheld the Class 1 rating. Claimant seeks judicial review of the board's order, arguing that the board erred by failing to conclude that the opinion of her attending physician—who rated her impairment as a Class 2—was more accurate and persuasive than that of the medical arbiters. Because we conclude that the board's order lacks substantial reason and that we therefore lack a sufficient basis to review for substantial evidence the board's findings as to the arbiters' opinions, we reverse and remand. ORS 183.482(8); ORS 656.298(7).

We recount the facts from the record and as adopted by the board. About two months after claimant sustained her work-related injuries, she began treatment with Dr. Wilson, her attending physician, who specializes in rehabilitation. In the months that followed, claimant underwent two neuropsychological evaluations by two other physicians, which revealed mild cognitive deficits. Wilson, relying on those evaluations and on claimant's reports of increased fatigue, opined that claimant had a Class 2 impairment for cognitive deficits. He opined that claimant's fatigue was related to the increased energy she was expending in attempting to overcome her cognitive deficits at work. The claim was then closed with an award of permanent partial disability for cognitive impairment at a Class 2 rating.

SAIF requested reconsideration of claimant's award and, as a result, claimant was evaluated by two medical arbiters: Dr. Leland, a neuropsychologist, and Dr. Lorber, a physiatrist. Leland, referencing claimant's difficulty with fatigue and reduced working hours, diagnosed her with a mild cognitive disorder and rated her disability as a Class 1.

Lorber similarly concluded that claimant fell within a Class 1 rating due to her cognitive deficits. Both medical arbiters noted that claimant presented with some somatic focus.[1] Based on the medical arbiters' opinions, the ARU reduced claimant's disability rating to a Class 1.

Claimant then sought review by an ALJ, arguing that the opinions of Leland and Lorber regarding her impairment rating were not as persuasive as Wilson's opinion because they had not adequately considered her extreme fatigue and its effect on her ability to work full time. In its order, the ALJ explained that the sole issue in this case was the extent of claimant's cognitive impairment; that is, whether claimant's impairment was a Class 1 or a Class 2. That issue, according to the ALJ, turned on "whether a preponderance of * * * the medical evidence demonstrates that the findings from the attending physician, Dr. Wilson, are more accurate and should be considered, rather than the findings of the medical arbiters."[2] The ALJ went on to state that, although Leland and Lorber did not specifically address whether claimant's reports of extreme fatigue would place her in Class 2 rather than Class 1, that alone did not render their opinions less persuasive. The ALJ explained that under Class 1 and Class 2 the focus is on whether claimant is limited in the types of work or types of jobs that claimant can perform. On that issue, the ALJ recognized that claimant was working fewer hours, which was the basis for Wilson's Class 2 rating, but noted that there was "no evidence that claimant is unable to perform the same type of work that she was performing prior to the injury." Thus, the ALJ concluded that Leland and Lorber's failure to address

---

[1] "Somatic focus" or "somatization" refers to "the production of physiological dysfunction often resulting in irreversible structural changes by the exaggeration and persistence of an emotional state." *Webster's Third New Int'l Dictionary* 2171 (unabridged ed 2002).

[2] The ALJ appears to have relied on OAR 436-035-0007(5)(b), which provides, in part:

"On reconsideration, where a medical arbiter is used, impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used."

All administrative rules cited in this opinion are those effective as of January 1, 2013.

claimant's fatigue did not detract from their conclusions about her rating, as she was still able to perform the same type of work. In addition, citing OAR 436-035-0390(10)(b), the ALJ concluded that the medical evidence indicated that "claimant's objective impairment is mild, and other limits and complaints are due to increased somatic focus, which is not related to claimant's brain injury."[3]

Claimant sought board review of the ALJ's order, arguing that, because Wilson considered her fatigue in rating her impairment, unlike the medical arbiters, his opinion should be used to restore her previous award of a Class 2 rating. The board, however, adopted and affirmed the ALJ's order, supplemented by its own reasoning. Citing *SAIF v. Banderas*, 252 Or App 136, 144-45, 286 P3d 1237 (2012), the board stated that, because it was not expressly rejecting Wilson's medical findings, the issue was whether those findings were more accurate than those of the medical arbiters. As to that point, claimant maintained that the findings of Leland and Lorber were less accurate, because they had not adequately considered her extreme fatigue and reduced work hours. Thus, the board set out to determine whether Leland and Lorber had indeed failed to consider those issues. To do so, the board examined their opinions, stating as follows:

> "In opining that claimant's permanent impairment met the criteria for Class 1, Drs. Leland, a clinical psychologist, and Lorber, a physiatrist, *expressly referenced* claimant's fatigue and work hour limitations. Specifically, Dr. Leland *noted* that claimant was experiencing 'extreme fatigue,' resulting in a reduced work week. * * * Dr. Leland also reviewed the closing examination of Dr. Wilson (the attending physician), which *noted* that claimant continued to report exhaustion and fatigue. * * * Dr. Lorber, too, *noted* that claimant was working part-time due to fatigue."

(Emphases added.) Based on that assessment, the board concluded that Leland and Lorber had considered claimant's fatigue and reduced hours in analyzing her impairment,

---

[3] OAR 436-035-0390(10)(b) provides:

"Emotional disturbances which are reactive to other residuals, but which are not directly related to the brain or head injury, such as frustration or depressed mood about memory deficits or work limitations, are not included under these criteria and must be addressed separately."

and, thus, it was "not persuaded that the arbiters neglected to apply the required elements of the Director's permanent disability standards in rating claimant's impairment attributable to her accepted concussion condition." Further, the board stated that there was no indication that the arbiters had misunderstood the appropriate standards for rating cognitive impairment. As such, the board indicated, it was unable to conclude that Wilson's findings were more accurate than those of Leland and Lorber. Thus, over the dissent of one board member, the board upheld the Class 1 rating.

The dissenting board member reasoned that, because Leland and Lorber did not specifically address claimant's fatigue or provide any reasoning in support of their Class 1 rating, there was no basis to conclude that they had considered all the necessary factors in rating claimant's impairment. Rather, the dissent found Wilson's findings more accurate because he had explained how claimant's fatigue and her inability to work regular hours justified a Class 2 rating.

On judicial review, claimant's primary argument is that the board erred in relying on the medical arbiters' impairment ratings because the arbiters "did not apply the Class 1 standards to claimant but gave only conclusory opinions." In particular, claimant argues that the board "did not articulate substantial reason based on the record for finding that *** Wilson was not more accurate" and that "there was no substantial evidence for the board's finding." Claimant maintains that there is no evidence to support the board's assertion that Leland and Lorber considered claimant's fatigue or work hour limitations as part of its reasoning and contends that Leland and Lorber did not give any explanation for why they applied the Class 1 rating or how they distinguished the Class 2 rating. Thus, according to claimant, the board's decision to rely on their "unexplained" opinions, as opposed to Wilson's more reasoned opinion, is not supported by substantial evidence or substantial reason.

SAIF, for its part, argues that the board adequately explained its reasons for relying on the medical arbiters' opinions as opposed to that of the attending physician, and further contends that substantial evidence supports the

board's finding that claimant's impairment satisfied the Class 1 criteria. SAIF notes that the opinions of Lorber and Leland are based on a thorough review of the medical record and on neuropsychological testing and additional tests by Leland and, as such, "a reasonable person could find that claimant's impairment was properly rated a Class 1."

We begin by identifying the relevant framework that governs our analysis. Under OAR 436-035-0007(5), a claimant's impairment is generally "established based on objective findings of the attending physician," unless a medical arbiter is used, in which case impairment is established "based on objective findings of the medical arbiter." However, as we stated in *Banderas*, 252 Or App at 144-45, "[w]here the attending physician has provided an opinion of impairment and the board does not expressly reject that opinion, OAR 436-035-0007(5) expressly permits the board to prefer the attending physician's impairment findings, if the preponderance of the medical evidence establishes that they are more accurate." In this case, we note that the board did not reject Wilson's opinion regarding claimant's impairment. Therefore, the issue before the board was whether Wilson's medical opinion regarding claimant's impairment rating is more accurate than Leland and Lorber's opinions.

That issue, as framed by the board below, turned on whether Leland and Lorber considered claimant's fatigue and reduced working hours in reaching their impairment rating. As noted, the board concluded that Leland and Lorber had done so, pointing to parts of their reports in which they noted her fatigue and reduced hours. We understand the board to have inferred that, because the arbiters referenced and appeared to be aware of claimant's fatigue, they necessarily considered that factor in rating her impairment. We review that inference for substantial evidence, as well as substantial reason. *See Arms v. SAIF*, 268 Or App 761, 767, 343 P3d 659 (2015) ("As part of our review for substantial evidence, we also review the board's order for substantial reason—that is, we determine whether the board provided a rational explanation of how its factual findings lead to the legal conclusions on which the order is based.").

In the context of this case, whether Leland and Lorber "considered" claimant's fatigue and reduced working hours in rating her impairment raises two separate but interrelated questions. The first is whether they believed that claimant's fatigue and reduced work hours are the result of the compensable injury. *See* OAR 436-035-0007(1) ("[A] worker is entitled to a value under these rules only for those findings of impairment that are permanent and were caused by the accepted compensable condition and direct medical sequela."); *see also Multnomah County v. Shults*, 243 Or App 354, 361-62, 258 P3d 1263 (2011) (there is an implicit requirement that the rated impairment is compensable, *i.e.*, caused by the compensable injury). The second question is how, or to what extent, the arbiters factored in claimant's fatigue and reduced work hours in reaching an impairment rating. *See* OAR 436-035-0007(2) ("Permanent disability is rated on the permanent loss of use or function of a body part, area, or system due to a compensable, consequential, or combined condition and any direct medical sequelae[.]"); OAR 436-035-0390(10), (11) (identifying the rating standards applicable to claimant's injury). The board's order does not address those two questions separately; it merely concludes that Leland and Lorber "considered" claimant's fatigue. For the following reasons, the board's order lacks substantial reason and is insufficient to allow for judicial review for substantial evidence.

Although Leland and Lorber referenced claimant's fatigue and reduced work hours in their evaluations, how they analyzed and weighed those factors in rating claimant's impairment remains unclear, in part because there appears to be some disagreement about the cause of her fatigue and the extent to which that affected her impairment and work capacity. A review of the record indicates that all three doctors—Wilson, Leland, and Lorber—noted that claimant exhibited somatic focus, which appears to have had some effect on her reported fatigue and functioning. The ALJ, addressing that issue, concluded that claimant's fatigue is due to increased somatic focus and not to the injury to her brain:

> "The medical evidence reflects that claimant's objective impairment is mild, and other limits and complaints are

due to increased somatic focus, which is not related to claimant's brain injury. * * * Wilson's opinion does not provide objective evidence that claimant's fatigue is due to injury to the brain."

Although the board went on to affirm and adopt the ALJ's order, the board did not reject Wilson's opinion, who made it clear that his rating of claimant's impairment was based on a finding that claimant's fatigue *was* a result of her cognitive impairments, noting that "her persistent complaint of fatigue is related to increased energy she is expending in attempting to overcome these [cognitive] deficits at work." The board did not explain how it reconciled Wilson's report with the opinions of Leland and Lorber, which were ambiguous on that issue. For example, Leland's evaluation states, "It is also noted that high levels of somatic focus can also create indications of cognitive inefficiency and may likely play a role in [claimant's] clinical presentation and neuropsychological functioning." Lorber's evaluation, in contrast, states:

> "No pre-existing medical records are available that detail her psychological status, though some records from 2001 indicate some somatic focus. I believe based on some minor abnormalities on the neuropsychological testing combined with [claimant's] general complaints is enough to justify Class 1 impairment."

Thus, in concluding that the arbiters had "considered" claimant's fatigue and reduced work hours, the board could have interpreted the opinions of Leland and Lorber in a number of ways. It could have found that the arbiters did not believe claimant's fatigue to be the result of her injury and therefore did not factor it into her impairment rating. Alternatively, the board could have concluded that the arbiters did attribute claimant's fatigue to her brain injury but nonetheless considered a Class 1 rating to be appropriate. Because the arbiters' evaluations are ambiguous as to whether or how they considered claimant's fatigue, those evaluations required board interpretation. *See Hicks v. SAIF*, 196 Or App 146, 151, 100 P3d 1129 (2004) ("When the medical arbiter's opinion is ambiguous as to whether the impairment is permanent or caused by the compensable condition, the board must interpret the opinion to determine

whether it rates impairment caused by the compensable condition."). However, the board's order lacks substantial reason such that we cannot determine how the board interpreted the opinions of the arbiters. Without substantial reason, we cannot review its inference—that, because the arbiters were aware of claimant's fatigue and reduced work hours, they must have considered those factors in rating her impairment—for substantial evidence.

Reversed and remanded for reconsideration.