360 December 6, 2023 No. 634

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of
Monika M. Gage, Claimant.

Monika M. GAGE,
*Petitioner,*

*v.*

FRED MEYER STORES - KROGER CO.,
*Respondent.*

Workers' Compensation Board
1900021OM; A177315

Argued and submitted February 14, 2023.

Julene M. Quinn argued the cause and filed the briefs for petitioner.

Rebecca A. Watkins argued the cause for respondent. Also on the brief was SBH Legal.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Reversed and remanded.

**MOONEY, J.**

This is an "own motion" workers' compensation claim on judicial review from the Workers' Compensation Board (board).[1] Claimant seeks judicial review of the "Second Own Motion Order Reviewing Carrier Closure on Reconsideration," which affirmed the self-insured employer's notice of claim closure without an award for additional permanent disability. The primary issue before the board was whether claimant's facet cyst at L4-5, a newly accepted medical condition initiated after aggravation rights had expired, or any direct sequelae attributable to that cyst, resulted in any additional permanent impairment or work restrictions. After rejecting the report of the medical arbiter panel as "ambiguous," and relying instead on the opinion of an attending physician, the board determined that claimant's facet cyst at L4-5 did not qualify as an additional impairment resulting from a previous, compensable injury. The board, thus, concluded that claimant was not entitled to a redetermination of her permanent disability.

Claimant seeks reversal of the board's order and raises three assignments of error. The first two assignments challenge as unsupported by substantial evidence and reason the board's findings that the arbiter panel opinion was ambiguous, and that an attending physician's report was more accurate and persuasive. In her third assignment, claimant argues that the board's order violates constitutional and statutory provisions by refusing to seek clarification of the ambiguity from the arbiter panel and refusing to obtain another medical arbiter report. We conclude that substantial evidence and reason do not support the board's determinations that the medical arbiter panel's report was ambiguous, and that the attending physician's report was more accurate. We need not, and do not, reach the third assignment of error. We reverse and remand.

We review legal issues for errors of law and factual issues for substantial evidence. ORS 183.482(8)(a), (c); *SAIF v. Williams*, 281 Or App 542, 543, 381 P3d 955 (2016).

---

[1] ORS 656.278 gives the board the authority to modify orders and awards on its own motion, even after the expiration of a claimant's "aggravation rights." That authority is referred to as "own motion" jurisdiction.

"[S]ubstantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding." *Garcia v. Boise Cascade Corp.*, 309 Or 292, 294, 787 P2d 884 (1990). Our review for substantial evidence necessarily includes review for substantial reason because our task is to determine whether the board adequately explained how it got from the factual findings that it made to the legal conclusions that it reached that caused it to issue its order. *SAIF v. Harrison*, 299 Or App 104, 105, 448 P3d 662 (2019). We recount the pertinent facts adopted by the board and from claimant's medical records. *Harvey v. SAIF*, 286 Or App 539, 540, 398 P3d 944 (2017).

Claimant sustained work-related injuries in 2005 when she slipped and fell at work. She filed a workers' compensation claim, which her employer accepted in its capacity as claimant's self-insured employer, for various disabling injuries, including right lumbar strain and a herniated L5-S1 disc. Dr. Moore, an orthopedic surgeon, performed two surgeries on the L5-S1 region, and claimant was awarded permanent disability. The claim was closed in December 2012, with claimant's right to claim additional compensation for worsened conditions—her "aggravation rights"—set to expire in December 2017, under ORS 656.273(4)(a).[2]

In June 2013, an MRI revealed, among other things, a developing cyst at claimant's L4-5 disc level. Dr. Andrews, a physician in Moore's clinical practice who specializes in nonsurgical approaches to conditions of the spine, attempted to treat the cyst by aspiration and injection but those efforts were not successful. Moore then requested authorization for an L4-5 posterior discectomy and laminectomy, but that claim was initially denied.

After it was later determined that the proposed surgery would be compensable, but before the surgery occurred, Moore ordered a second MRI. In June 2015, the second MRI was read and reported as showing that the cyst was no

---

[2] ORS 656.273(4) provides, in part,

"The claim for aggravation must be filed within five years:

"(a) After the first notice of closure made under ORS 656.268 for a disabling claim[.]"

longer present. Because the cyst appeared to have resolved, the employer sought to close the claim.

The employer retained Dr. Ha, an orthopedic surgeon, to perform the closing examination. Ha concluded that claimant's conditions were medically stationary, and that she could perform sedentary or light work. It was his opinion that no further surgical intervention would be required because the 2015 MRI indicated that the cyst had resolved. Andrews concurred, and claimant's claim was closed without an additional permanent disability award.

Moore concluded that the 2015 MRI had not been correctly read or reported by the radiologist. Moore documented that she could "see the cyst very clearly on the sagittal view" of the 2015 MRI study itself. She ordered a follow-up MRI, which was completed in June 2016. That MRI showed a cyst at the L4-5 disc, along with an L4-5 herniation and nerve impingement on both the left and right sides. Moore again requested authorization for an L4-5 discectomy and decompression for the purpose of accomplishing surgical decompression and to excise the cyst. That request was again denied.

Other arrangements were made for health insurance coverage, and Moore performed the surgery without approval from the employer. Upon request for additional information, Moore confirmed that the surgery she performed was the same surgery that she "had proposed in early 2014 to decompress the spine and remove the cyst at L4-5[.]" Reimbursement for the surgery was again denied when the employer determined that the surgery "was directed to claimant's denied bilateral L4-5 lateral recess and foraminal stenosis."

In April 2018, claimant submitted a request to add a new/omitted medical condition claim for the cyst. The employer accepted the new claim which was then reopened for processing. As part of its investigation, the employer sent a check-the-box questionnaire to Andrews asking if he "consider[ed] the L4-5 facet cyst condition to be medically stationary as of, at the latest, June 30, 2015, when a repeat lumbar spine MRI showed '[t]he previously documented subligamentous right synovial cyst [was] no longer present.'"

Andrews checked the "yes" box. He similarly checked the "yes" box indicating that he agreed that the L4-5 cyst did not result in any additional permanent impairment or work restrictions.

A subsequent CT scan showed continued deterioration of the L4-5 region and L5-S1 stenosis. Moore recommended an epidural steroidal injection, which Andrews administered. After two such injections, claimant reported only temporary relief, and Moore recommended an L4-5 decompression and fusion to treat claimant's L4-5 stenosis and spondylolisthesis. Moore performed the surgery in May 2019, and both Moore and Andrews reported that claimant's condition was improved.

In June 2019, the employer issued an Own Motion Notice of Closure that did not award additional permanent disability for claimant's L4-5 synovial cyst. The closure was based on Andrews' "yes" responses concerning the cyst that we just described. Claimant requested review.

## THE BOARD'S REVIEW

On review, claimant requested that the board increase her permanent disability award. Because she contested Andrews' statements about the cyst, she also requested that the board appoint a medical arbiter under OAR 438-012-0060(6)(a).[3] The board referred the case to the Appellate Review Unit (ARU) to appoint the arbiter. The medical arbiter, a panel consisting of three physicians, conducted an examination and reported its findings to the ARU. In its report, the arbiter panel stated that it agreed with Andrews that "the newly accepted condition is not contributing to the noted motion loss in the lumbar spine." It concluded that "it is medically probable the loss of motion *** is related to the herniated disk at L4-L5 and the subsequent surgeries to address th[at] issue." The panel also

---

[3] OAR 438-012-0060(6)(a) provides:

"(6) After the claimant requests Board review of a Notice of Closure of a 'post-aggravation rights' new medical condition(s) or omitted medical condition(s) claim ***, the Board may refer the claim to the Director for appointment of a medical arbiter to evaluate permanent disability attributable to the claimant's 'post-aggravation rights' new medical conditions(s) or omitted medical conditions(s) if:

"(a) The claimant objects to the impairment findings used to rate impairment *** and requests appointment of a medical arbiter[.]"

noted that claimant had been using a walker on a consistent basis since her most recent surgery—the 2019 L4-5 decompression and fusion.

The ARU sent a request for additional information to the arbiter panel:

"In your report you stated the worker stated since her most recent [surgery] she needed to use a walker. For the record, please respond to the following:

"1.   Please indicate whether or not the worker is *prevented* from **being on her feet for more than two hours in an 8-hour period**, due to the newly accepted condition(s) and direct medical sequela of the newly accepted condition(s). If so, please explain the necessity for this restriction."

(Emphasis, underscore, and boldface in original.) The same panel member who wrote the original report, Dr. Harris, responded on behalf of the arbiter panel. He answered "Yes," and added "Too much pain + lack of motion after numerous surgeries to low back," and that "40% of the need for this restriction is related to newly accepted condition, and 60% is related to other accepted conditions."[4]

The board affirmed the employer's notice of closure. It declined to adopt the arbiter panel's report, finding it to be "ambiguous," and reasoning that the report "was made in the context of, and based on, claimant's statements that she needed to use a walker" since the 2019 surgery. Noting that the 2019 surgery was "performed by Dr. Moore to treat claimant's L4-5 stenosis, which is a denied condition," and that "the medical arbiter panel report erroneously stated that claimant had no denied conditions," the board concluded that there was "no indication that the panel was aware that Dr. Moore had recommended the surgery to treat claimant's L4-5 stenosis condition or that the condition had been denied[.]" Because Andrews had greater "familiarity with claimant's conditions," the board found that "his impairment findings preponderate over those of the medical arbiter panel," that they were "more accurate," and that they "should be used to rate claimant's permanent impairment." Based on Andrews' findings, the board concluded

---

[4] The parties refer to this response from Harris as the panel's supplemental report.

that "there are no impairment findings *** that support an additional permanent disability award."

Claimant requested reconsideration, arguing that the medical arbiter panel's opinion was not ambiguous and that, under *Hicks v. SAIF*, 194 Or App 655, 96 P3d 856, *adh'd to as modified on recons*, 196 Or App 146, 100 P3d 1129 (2004), the board could not disregard the medical arbiter panel's opinion. Instead, she argued, the board must seek clarification from the arbiter panel. She also argued that Andrews' opinion was based on an old MRI and was therefore neither accurate nor current. The board disagreed and affirmed its decision finding Andrews' report to be more persuasive than the panel's report because he was more familiar with claimant and her medical history. The board also determined that it lacked the authority to send the report back to the medical arbiter panel for clarification.

Claimant again requested reconsideration, this time arguing, among other things, that because the board would not allow correction of the arbiter panel's report that the board had concluded was ambiguous, she was effectively left without the ability to challenge the board's reliance on Andrews' report over that of the panel. The board again affirmed its decision, and claimant petitioned for judicial review.

## THE BOARD'S "OWN MOTION" JURISDICTION

ORS 656.278(1) authorizes the board to "modify, change or terminate former findings" on its own motion. That authority is limited to cases in which a condition for which the board has awarded disability worsens, ORS 656.278(1)(a), or in cases where the claimant's aggravation rights have expired and a new medical condition thought to be materially related to the original workplace injury is accepted for the first time, ORS 656.278(1)(b). All relevant statutes that control disability awards "apply equally to" the board's orders under ORS 656.278. *Edward Hines Lumber Co. v. Kephart*, 81 Or App 43, 46, 724 P2d 837 (1986).

Pursuant to ORS 656.278, the board has promulgated rules to govern its "own motion jurisdiction." An own motion claim is processed first by the workers' compensation

carrier or, as here, by the self-insured employer. OAR 438-012-0020(1). The carrier will close the claim and provide any award of permanent disability once the new or previously omitted condition has become medically stationary. OAR 438-012-0055.

The findings of the injured worker's attending physician are generally used to determine when a condition is medically stationary and the degree of impairment caused by that condition. OAR 436-035-0007(5)(a). When a worker requests a medical arbiter examination, the arbiter's report is instead used to establish impairment—unless a preponderance of the medical evidence establishes that the attending physician's findings are more accurate. OAR 436-035-0007(5)(b); *SAIF v. Banderas*, 252 Or App 136, 145, 286 P3d 1237 (2012). If the arbiter's report is ambiguous as to whether impairment is the result of a compensable injury, the board must interpret the report to determine whether the report attributes impairment to the injury. *See Harvey*, 286 Or App at 546-47 (where the board did not interpret an ambiguous arbiter's report, we could not review the board's inferences for substantial evidence).

As we have already mentioned, claimant's first two assignments of error contend that there was not substantial evidence to support the board's conclusion that the medical arbiter's report was ambiguous or its conclusion that Andrews' report was more accurate and reliable than the arbiter panel's report. We address each of those assertions in turn.

## THE MEDICAL ARBITER PANEL REPORT

In her first assignment of error, claimant asserts that the board lacked substantial evidence and reason to conclude that the medical arbiter panel report was ambiguous. She argues that the arbiter panel clearly identified the newly accepted condition, and unambiguously attributed 40 percent of her impairment to that condition. The employer disagrees, arguing that the panel's original and supplemental reports contradict one another, and that it is unclear from the report if the panel understood the scope of their task because the original report did not identify the newly

accepted condition, and it did not indicate that there were denied conditions.

We review the board's conclusion that the arbiter panel report was ambiguous by focusing on the conclusions, rather than the reasoning, of the arbiter panel. For example, in *Khrul v. Foremans Cleaners*, 194 Or App 125, 93 P3d 820 (2004), we concluded that substantial evidence supported the board's conclusion that the arbiter panel's report that "claimant's impairment 'at this time' is 35 percent" was ambiguous as to the permanency of the impairment. *Id.* at 132. Noting that "it is possible to infer that * * * the reported 35 percent impairment was permanent impairment," we concluded that the report also "permit[ted] an inference that, although claimant had impairment at the time of rating, [the arbiter] believed that the impairment was not permanent or caused by the compensable condition and would resolve after claim closure." *Id.* In *Harvey*, we agreed that substantial evidence supported a conclusion that the report was ambiguous where the board "could have found that the arbiters did not believe claimant's [impairment] to be the result of her injury." 286 Or App at 546. Alternatively, "the board could have concluded that the arbiters did attribute claimant's [impairment] to her brain injury[.]" *Id.*

Conversely, when a medical arbiter is used and its report is clear and unambiguous, "impairment is established based on the objective findings of the medical arbiter." OAR 436-035-0007(5)(b). The ultimate question in *Hicks* was whether the board was free to reject the medical arbiter's unambiguous report when it was the only opinion of impairment. On reconsideration, we said that the medical arbiter's report was unambiguous in attributing impairment to the compensable condition, and we emphasized that the board was not free to interpret that report to conclude that it was not persuasive and reject it. *Hicks v SAIF*, 196 Or App 146, 151-52, 100 P3d 1129 (2004). In this case, the arbiter panel's report likewise unambiguously attributed claimant's impairment to the compensable new condition. Whether a report is ambiguous is a separate question from whether it is persuasive. Considering the thought process and method by which an arbiter reaches its conclusions is useful in

determining the persuasiveness of the report. But the persuasiveness of a report is not relevant to whether its conclusions are ambiguous. Here, the medical arbiters' report attributed "40% of the need *** to [the] newly accepted condition, and 60% *** to other accepted conditions." That attribution of impairment is unequivocal. It does not give rise to competing inferences and it is not ambiguous.

The employer argues that there is "a contradiction" between the original panel's report and the supplemental report because the original "stated no reduction in motion could be related to the facet cyst," while the second report attributed impairment to the cyst. But there is no contradiction. The first report stated that the new condition did not contribute to claimant's loss of motion in her lumbar spine. The second report answered the question put to it about whether claimant was "*prevented* from **being on her feet for more than two hours in an 8-hour period**[.]" (Emphasis, underscore, and boldface in original.) Those topics—loss of spinal motion and inability to stand for two hours—are different. The panel's report is not contradicted by its response to follow-up questions. Its response to the follow-up inquiry addresses a different topic than the one that the board now points to in the first report as having been contradicted by the panel in its response. The panel's response to follow-up questions does not create an ambiguity in the first report. Neither substantial evidence nor substantial reason support the board's conclusion to the contrary.

We address claimant's second assignment of error because the issue that it raises is likely to arise on remand. *See State v. Savage*, 305 Or App 339, 342, 470 P3d 387 (2020) ("[W]e will consider issues likely to arise on remand when the trial court or agency has determined a question of law that will still be at issue after the case is remanded.").

### ANDREWS' REPORT

In her second assignment, claimant asserts that substantial evidence and reason "do not support the board's finding that Dr. Andrews' report regarding claimant's permanent disability *** was more accurate and persuasive" than the arbiter panel's report. The employer responds,

first, that Andrews had greater familiarity with claimant's medical history than did the panel and, next, that Andrews' opinion was better aligned with claimant's medical history than was the panel's. We review each of the board's contentions for substantial evidence and reason. *See Garcia*, 309 Or at 296 (explaining that, if the board asserts a finding of fact in explaining its decision to disregard certain evidence, that fact "is subject to attack" if it is not, itself, supported by substantial evidence).

The board ties its conclusion that the panel did not consider all of claimant's medical history in forming its opinion to claimant's statement that she needed a walker after her most recent surgery, which was performed for a denied condition. But the panel did not list that statement, directly or otherwise, as a basis for its final conclusion. And the board points to nothing else in the report or in the record to suggest that the panel relied on, or was significantly influenced by, claimant's statement about when she began using a walker. Moreover, the board's contention that the panel's report "erroneously stated that claimant had no denied conditions" does not explain or otherwise add reason to its decision to reject the panel's report and to instead rely upon Andrews' opinion. The medical arbiter panel, like Andrews, examined the claimant after reviewing medical records detailing her medical history, and then reached diagnostic opinions about her conditions, potential causes of those conditions, and related levels of impairment. The panel's failure to accurately designate certain medical conditions as "accepted" or "denied" for workers' compensation purposes is not relevant to its medical opinions about those conditions.

Similarly, the board's reliance on Andrews' opinion because he was more familiar with claimant's conditions is not supported by substantial evidence or reason. Andrews concluded in 2015 that claimant's L4-5 facet cyst had resolved based on an MRI report from that same year. Certainly, resolution of the cyst then might have been evidence that Andrews' aspiration of the cyst in July 2013 had been successful. But the board made an express finding that the 2016 MRI confirmed that the cyst had not, in

fact, resolved and that Moore ended up removing the cyst in a subsequent surgery. That finding was consistent with Moore's conclusion, reached after visualizing the 2015 MRI images—in particular the sagittal view in which the cyst was visible—and her surgical findings from the later surgery when she excised the cyst.

It is not clear why the board selected Andrews rather than Moore as claimant's attending physician given that they both treated her spinal conditions, non-surgically and surgically, respectively. It is clear, though, that the reasons the board gave for its conclusion that Andrews' opinion was "more accurate and persuasive" than that of the panel is not based on substantial evidence or reason. More importantly, and as we have explained, the arbiter panel's report is not ambiguous. Because we are reversing and remanding on those bases, there is no need for us to address the third assignment of error, and we do not do so.

Reversed and remanded.